LOCAL GOVERNMENT EMPLOYEE-MANAGEMENT RELATIONS BOARD, CITY OF LAS VEGAS, AND LAS VEGAS CITY EMPLOYEES PROTECTIVE AND BENEFIT ASSOCIATION, INC., APPELLANTS, *v.* GENERAL SALES DRIVERS, DELIVERY DRIVERS AND HELPERS, TEAMSTERS LOCAL UNION NO. 14 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, RESPONDENTS.

No. 12537

March 3, 1982                    641 P.2d 478

*Galane & Jimmerson,* Las Vegas; *Richard H. Bryan,* Attorney General, Carson City, *Robert N. Peccole,* Deputy Attorney General; and *George F. Ogilvie,* City Attorney, Las Vegas, for Appellants.

*Gang & Berkley,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

This is an appeal from an order of the district court reversing a decision and order of the Local Government Employee-Management Relations Board (EMRB). The EMRB concluded, after conducting hearings and taking evidence, that a request to carve out a bargaining unit from an existing unit of employees of the City of Las Vegas was not warranted. The district court overruled the board, concluding that the board was required by the Local Government Employee-Management Relations Act, NRS Ch. 288, to carve out a bargaining unit whenever a sufficient showing was made of a "community of interest" in such a proposed unit. We disagree, and reinstate the decision and order of the board.

In January, 1977, a local union affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of Las Vegas (Teamsters) sought recognition

from the City of Las Vegas (City) as the collective bargaining representative for certain of its employees in designated "blue collar" job classifications. The Teamsters based their request upon signed authorization cards, which they claimed represented a majority of the workers in a proposed "blue collar" bargaining unit. At the time of the Teamsters' request, there was in effect a collective bargaining agreement between the City and the Las Vegas City Employees' Protective and Benefit Association (CEA), recognizing the CEA as the exclusive representative of all City employees except department heads, administrative and confidential employees, and firemen.

The City denied the Teamsters' request for recognition, relying primarily upon their previous contractual recognition of CEA as exclusive bargaining agent of the employees whom the Teamsters sought to represent. The Teamsters appealed the City's determination to the EMRB. The board decided that the City had properly denied the Teamsters' request for recognition. The EMRB found "[a]lthough there may or may not be a community of interest among blue collar workers there is a greater and overriding community of interest among all the non-uniformed employees of the City." The board therefore declined to designate the "blue collar" workers as a separate bargaining unit and accordingly denied the Teamsters' request to hold a representation election in such a unit.

The Teamsters petitioned the district court for review, arguing that the board's ruling should be reversed because it had violated statutory provisions, or was in excess of the board's statutory authority, NRS 233B.140(5)(a) and (b),[1] by refusing to make a unit determination based solely upon a showing of a community of interest among the blue collar workers. The district court agreed, reversing the order of the board and further ordering that a representative election be held among the blue collar workers. In our view, the position taken by the district court ignored the appropriate role taken by the EMRB in the interpretation and administration of the act.

When the legislature adopted a statutory scheme for public

[1]NRS 233B.140(5) provides, in pertinent part, that:

The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. . . . The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(a) In violation ·of . . . statutory provisions;

(b) In excess of the statutory authority of the agency. . . .

employee collective bargaining in 1969, it provided that "[t]he board may hear and determine any complaint arising out of the interpretation of, or performance under, the provisions of this chapter by any local government employer, local government employee or employee organization." NRS 288.110(2). As this court held in Clark County School District v. Local Government Employee-Management Relations Board, 90 Nev. 442, 446, 530 P.2d 114, 117 (1974): "Unless the board should act arbitrarily, unreasonably or capriciously beyond administrative boundaries the courts must give credence to the findings of the board. An agency charged with the duty of administering an act is impliedly clothed with power to construe it as a necessary precedent to administrative action."

In this case, the board's jurisdiction to determine the appropriate bargaining unit, invoked by the Teamsters by virtue of their appeal, is contained in the language of NRS 288.160(4). This statute provides: "If an employee organization is aggrieved by the refusal or withdrawal of recognition [by the local government employer] . . . the aggrieved employee organization may appeal to the board. If the board in good faith doubts whether any employee organization is supported by a majority of the local government employees *in a particular bargaining unit,* it may conduct an election by secret ballot upon the question." (Emphasis added.) Contrary to the position urged by the Teamsters, nothing in the statute specifies that the "particular" unit must be defined as any unit for which a community of interest can be shown.

The Teamsters point to NRS 288.170, which provides for an initial determination of appropriate bargaining units by a local government employer, after consultation with recognized employee organizations, and further provides that for such an employer, and for the board on appeal, "[t]he primary criterion for such determination shall be community of interest *among the employees concerned.*" (Emphasis added.) The board's decision clearly reflects its conclusion that "the employees concerned" were not only the members of the bargaining unit which the Teamsters sought to carve out, but all of the employees who would be affected by such a split in bargaining representation.

We are unable to conclude that such an interpretation was beyond the statutory authority of the EMRB. The board had

before it a request for severance of a unit which would "carve out" a majority of the members of the existing unit, into a separate unit with different organizational representation. It also had before it evidence of a history of successful representation and negotiation on behalf of the City's employees, including a recently concluded three-year agreement on behalf of blue collar and white collar workers; testimony that the same civil service rules applied to all members of the existing unit and provided for interchange of blue collar and white collar employees upon merit qualification; and testimony from blue collar workers who had participated on the CEA negotiating team or were executive officers in the association, indicating their perceived "community of interest" with City employees generally. Further testimony indicated that the Teamsters' organizational effort coincided with a temporary period of concern among workers occasioned by a City job study.

We are loathe to commit the board, which has been charged by the legislature with the duty to administer the act regulating public employee collective bargaining in this state, to any particular policy course not clearly dictated by the terms of the statute itself.[2] As we have previously held with regard to the EMRB, "great deference should be given to the agency's interpretation when it is within the language of the statute." Clark Co. Sch. Dist. v. Local Gov't, *supra,* 90 Nev. at 446, 530 P.2d at 117.

As we have often held, neither the trial court, nor this court, may substitute its judgment for that of an administrative agency acting within its statutory authority. *E.g.,* North Las Vegas v. Pub. Serv. Comm'n, 83 Nev. 278, 429 P.2d 66 (1967). It is not our function to pass on the credibility of witnesses, or to weigh the evidence presented to the agency, but merely to ascertain whether the board's findings are supported by substantial evidence, or whether its decisions are, on the contrary, clearly erroneous, arbitrary or capricious. *See,* Gandy v. State ex rel. Div. Investigation, 96 Nev. 281, 607 P.2d 581 (1980); PSC v. Continental Tel. Co., 94 Nev. 344, 580 P.2d 467 (1978); Urban Renewal Agcy. v. Iacometti, 79 Nev. 113, 379 P.2d 466 (1963).

---

[2] For the importance of unit determination in the public sector, *see, e.g.,* E. Rock, *The Appropriate Unit Question in the Public Service: The Problem of Proliferation,* 67 Mich. L. Rev. 1001, 1001 (1969).

The board in this case acted within its statutory discretion, upon findings supported by substantial evidence. We therefore uphold the decision of the Local Government Employee-Management Relations Board and reverse the order of the district court.

GUNDERSON, C. J., and MANOUKIAN, SPRINGER, and MOWBRAY, JJ., and ZENOFF, SR. J.,[3] concur.