TRUCKEE MEADOWS FIRE PROTECTION DISTRICT, Appellant, *v.* INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 2487, and STATE OF NEVADA LOCAL GOVERNMENT EMPLOYEE-MANAGEMENT RELATIONS BOARD, Respondents.

No. 22993

March 25, 1993

849 P.2d 343

*Dorothy Nash Holmes,* District Attorney, and *Gregory Shannon,* Deputy District Attorney, Washoe County, for Appellant.

*Frankie Sue Del Papa,* Attorney General and *John Redlein,* Deputy Attorney General, Carson City, for Respondent Board.

*Dyer & McDonald* and *James W. Penrose,* Carson City, for Respondent IAFF Local 2487.

*Weinstein & Ashman,* Las Vegas, and *Mulholland & Hickey* and *Erick Jay Genser,* Washington, D.C., for Amicus Curiae IAFF.

## OPINION

*Per Curiam:*

Appellant Truckee Meadows Fire Protection District ("TMFPD") and respondent Local 2487 of the International Association of Fire Fighters ("Local 2487") entered into negotiations regarding a collective bargaining agreement for 1989-91. During collective bargaining, Local 2487, exclusive bargaining agent for the nonsupervisory employees of TMFPD, proposed the following successorship clause for negotiation in the event that TMFPD transferred its firefighting operations during the term of the collective bargaining agreement:

> The District agrees to not sale [sic] or convey or cause to sale [sic] or convey or otherwise transfer or cause to transfer its operations to a new employer without first securing the agreement of the successor to assume the District's obligations under this agreement.

TMFPD's bargaining representative refused to negotiate over the inclusion of the proposed successorship clause in the collective bargaining agreement, and Local 2487 filed a complaint with respondent Local Government Employee-Management Relations Board ("EMRB").

The EMRB decided that the clause did not purport to limit TMFPD's power to sell, convey or transfer firefighting operations, but instead, merely addressed that contingency of successorship on the employees in Local 2487 should a transfer occur. The EMRB determined that the subject matter of the successorship clause "significantly related" to the subjects of mandatory bargaining set forth in NRS 288.150(2), and was therefore a mandatory subject of bargaining.

TMFPD sought review by the district court, and the district court affirmed the EMRB's decision. On appeal, TMFPD contends that the successorship clause involves its initial decision to

sell, convey or transfer its operations rather than the effects of that decision, and therefore, the clause impermissibly intrudes on an area reserved to management.

## DISCUSSION

### Standard of Review

NRS 288.110 authorizes the EMRB to "hear and determine any complaint arising out of the interpretation of, or performance under, the provisions of this chapter by any local government employer, local government employee or employee organization." Historically, this court has accorded substantial deference to EMRB rulings. *See, e.g.*, Local Gov't Emp. v. General Sales, 98 Nev. 94, 641 P.2d 478 (1982). In Clark Co. Sch. Dist. v. Local Gov't, 90 Nev. 442, 446, 530 P.2d 114, 117 (1974), this court stated:

> Unless the [EMRB] should act arbitrarily, unreasonably or capriciously beyond administrative boundaries the courts must give credence to the findings of the board. An agency charged with the duty of administering an act is impliedly clothed with power to construe it as a necessary precedent to administrative action. Indeed, NRS 288.110 charges the board with that responsibility and great deference should be given to the agency's interpretation when it is within the language of the statute.

*See also* City of Reno v. Reno Police Prot. Ass'n, 98 Nev. 472, 474, 653 P.2d 156, 158 (1982).

### *Nevada's statutory scheme for collective bargaining in the public sector.*

The Nevada Legislature enacted the Local Government Employee-Management Relations Act in 1969. One of the act's provisions created the EMRB to adjudicate labor disputes between local government employers and their employees' labor organizations. NRS 288.110. NRS 288.060 defines local government employers as any political subdivision including cities, counties, school districts and "other special districts." TMFPD qualifies as a "special district" under the provision.

After an employee bargaining unit has been formed and recognized pursuant to NRS 288.160-.180, the employer and employee representatives are required to participate in collective bargaining. NRS 288.033. NRS 288.150(2) enumerates the following subjects on which local government employers must collectively bargain with their organized workers:

2. The scope of mandatory bargaining is limited to:

(a) Salary or wage rates or other forms of direct monetary compensation.

(b) Sick leave.

(c) Vacation leave.

(d) Holidays.

(e) Other paid or nonpaid leaves of absence.

(f) Insurance benefits.

(g) Total hours of work required of an employee on each workday or work week.

(h) Total number of days' work required of an employee in a work year.

(i) Discharge and disciplinary procedures.

(j) Recognition clause.

(k) The method used to classify employees in the bargaining unit.

(l) Deduction of dues for the recognized employee organization.

(m) Protection of employees in the bargaining unit from discrimination because of participation in recognized employee organization consistent with the provisions of this chapter.

(n) No-strike provisions consistent with the provisions of this chapter.

(o) Grievance and arbitration procedures for resolution of disputes relating to interpretation or application of collective bargaining agreements.

(p) General savings clauses.

(q) Duration of collective bargaining agreements.

(r) Safety of the employee.

(s) Teacher preparation time.

(t) Materials and supplies for classrooms.

(u) The policies for the transfer and reassignment of teachers.

(v) Procedures for reduction in work force.

Pursuant to NRS 288.150(3), the local government employer is not, however, required to bargain on certain subjects, which are reserved to management. NRS 288.150(3) provides as follows:

Those subject matters which are not within the scope of mandatory bargaining and which are reserved to the local government employer without negotiation include:

(a) Except as otherwise provided in paragraph (u) of subsection 2, the right to hire, direct, assign or transfer an employee, but excluding the right to assign or transfer an employee as a form of discipline.

(b) The right to reduce in force or lay off any employee because of lack of work or lack of money, subject to paragraph (v) of subsection 2.

(c) The right to determine:

(1) Appropriate staffing levels and work performance standards, except for safety considerations;

(2) The content of the workday, including without limitation work load factors, except for safety considerations;

(3) The quality and quantity of services to be offered to the public; and

(4) The means and methods of offering those services.

(d) Safety of the public.

Successorship is not one of the enumerated subjects of mandatory bargaining under NRS 288.150(2). This court, however, has held that a subject not specifically enumerated in NRS 288.150 as a nonnegotiable subject is nevertheless a mandatory subject of bargaining if it bears a "significant relationship" to wages, hours, and working conditions. This court approved the EMRB's use of the "significantly related" test in the consolidated cases of Clark Co. Sch. Dist. v. Local Gov't and Washoe Co. Teachers Ass'n v. Washoe Co. Sch. Dist., 90 Nev. 442, 530 P.2d 114 (1974).[1] In Clark Co. Sch. Dist., this court addressed, inter alia, the issue of a teacher's classroom preparation time. The 1974 version of NRS 288.150 required employers to bargain with employee representatives concerning "wages, hours and conditions of employment." The school board asserted that classroom preparation time was a policy matter, and therefore, was not subject to negotiation. Id. at 445, 530 P.2d at 116. This court rejected the school board's argument, noting that many matters which bear on management policy also involve wages, hours, and working conditions.[2] Id. at 446, 530 P.2d at 117. Thus, this court

---

[1] After the Clark Co. Sch. Dist. decision, the Legislature amended NRS 288.150 by specifically detailing the subjects of mandatory bargaining. 1975 Nev. Stat., ch. 539. However, the EMRB stated in Douglas Co. Professional Educ. Ass'n v. Douglas C. Sch. Dist., Case No. A1-045380, Item No. 168 (1984), "the 'subjects' specified by the Legislature are couched in terms which lead to the inescapable conclusion that such 'subjects' are the specified areas of bargaining and the extent of topics encompassed within such areas is subject to interpretation and limitation or definition by this Board. In this limited context, the significant relation test has continuing validity." See also Henderson Police Officers Ass'n v. City of Henderson, Case No. A1-045314, Item No. 83 (1978).

[2] This court stated:

For this court to hold that any item even though remotely relevant to management policy is beyond the pale of negotiation defeats the purpose of the legislation. Many matters involved in a teacher's work day bear somewhat on management policy and at the same time are inex-

held "that the government employer be required to negotiate if a particular item is found to *significantly relate* to wages, hours and working conditions even though that item is also related to management prerogative." *Id.* at 446-47, 530 P.2d at 117. This court found that the "significantly related" standard and the EMRB's findings based on the standard were reasonable. *Id.* at 447, 530 P.2d at 117. This court stated that the district court properly upheld the EMRB's conclusion because "NRS 288.110 gives the board power to hear and *determine* any complaint arising out of the interpretation of [NRS 288.150]." *Id.*

In Kansas Bd. of Regents v. Pittsburg State Univ. Chapter, 667 P.2d 306, 319-20 (Kan. 1983), the Kansas Supreme Court extensively discussed *Clark Co. Sch. Dist.* in approving the Kansas Public Employee Relations Board's adoption of a "significantly related" test. In *Pittsburg State Univ. Chapter,* the court noted that:

> PERB, as the arbiter between employer and employee, has fashioned a "significantly related" test in an effort to steer a middle course between minimal negotiability, with nearly absolute management prerogative, and complete negotiability, with few management prerogatives. In so doing it has devised a commonsense approach to the problem of sorting out matters which cannot be easily defined or neatly categorized, in order to determine their negotiability.

*Id.* at 319.

We conclude that the "significantly related" test which the EMRB used in the instant case was within the scope of the agency's authority.

### Precedent regarding successorship clauses.

In reaching its decision in the instant case, the EMRB relied on the decision of the National Labor Relations Board ("NLRB") in United Mine Workers (Lone Star Steel Co.), 231 N.L.R.B. 573 (1977). In *Lone Star,* the NLRB considered the following successorship clause, which is virtually identical to the clause in the instant case:

> In consideration of the Union's execution of this Agreement, each Employer promises that its operations covered by this Agreement shall not be sold, conveyed, or otherwise trans-

---

tricably linked to wages, hours and conditions of employment. What the legislature gave was not intended to immediately be taken away.
*Clark Co. Sch. Dist.,* 90 Nev. at 446-47, 530 P.2d at 117.

ferred or assigned to any successor without first securing the agreement of the successor to assume the Employer's obligations under this Agreement.

*Id.* at 548. Similar to the proposed successorship clause in the instant case, this clause conditioned any transfer of operations on the successor's agreement to be bound by the collective bargaining agreement. Like TMFPD, the employer in *Lone Star* argued that the successorship clause infringed on its decisionmaking prerogatives and therefore did not merely concern the effects of successorship.

The NLRB stated that the scope of mandatory bargaining under the National Labor Relations Act ("NLRA") is generally limited to those issues involving the relationship between the employer and employees; matters outside the employment relationship are excluded from mandatory bargaining unless they "vitally affect" the subjects of mandatory bargaining. *Id.* at 575. Although recognizing that successorship is a matter outside of the employment relationship, the NLRB found that the subject matter of the successorship clause "vitally affected" matters that were mandatory subjects of bargaining. Thus, the NLRB found that the clause was a mandatory subject of bargaining.[3]

The Tenth Circuit upheld the NLRB's decision in Lone Star Steel Co. v. NLRB, 639 F.2d 545 (10th Cir. 1980), *cert. denied,* 450 U.S. 911 (1981). The court held that the NLRB did not err in ruling that the successorship clause was a mandatory subject of bargaining. The court concluded that the NLRB had struck an appropriate balance between an employer's freedom to rearrange its business and the employee's interest in protection from a sudden change in the employment relationship. It found that

> *the successorship clause implicates the effect of the decision, rather than the decision itself.* Under the proposed contract Lone Star would still be free to dispose of its coal properties

---

[3]The NLRB stated:

> [W]e are persuaded that a successor's assumption of any collective-bargaining agreement negotiated between the Union and Lone Star would be vital to the protection of Starlight employees' previously negotiated wages and working conditions, as it is clear that the general rules governing successorship guarantee neither employees' wages nor their jobs. In view of the foregoing, we agree that the Union's insistence upon including in any agreement reached a provision which would assure the survival of the fruits of collective bargaining, in the event Lone Star thereafter should dispose of the Starlight mine, is not violative of the Act, as agreement in this regard *would vitally affect the terms and conditions of employment* of the miners who survived such a change in ownership.

*Lone Star Steel,* 231 N.L.R.B. at 575 (emphasis added).

as it desired, without first bargaining with the Union. On the other hand the effect would be that the employees are assured that the fruits of collective bargaining would survive a change in ownership.

*Id.* at 556 (emphasis added).

Like the clause in *Lone Star,* the instant successorship clause does not place any restrictions on TMFPD's decision to transfer its operations. For example, Local 2487 does not seek veto power over TMFPD's decision to transfer operations. As with *Lone Star,* the proposed clause, merely ensures that the fruits of Local 2487's collective bargaining would survive sale, conveyance or transfer.

### *Applicability of NLRB precedent.*

TMFPD contends that the *Lone Star* case is not persuasive precedent because the NLRA specifically provides that the term "employer" in the Act does not include "any State or political subdivision thereof." 29 U.S.C. § 152(2). Therefore, public employees of a state's political subdivisions are not governed by federal labor laws. N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n, 821 F.2d 328, 331-32 (6th Cir. 1987). Furthermore, a county has no duty to bargain with its employees unless the legislature of the state provides otherwise. Local Union No. 370 v. Detrick, 592 F.2d 1045, 1046 (9th Cir. 1979). However, the Nevada Legislature enacted NRS Chapter 288 to give public employees bargaining rights. Clark Co. Sch. Dist. v. Local Gov't, 90 Nev. 442, 444, 530 P.2d 114 (1974). Apparently, the legislature intended to apply principles similar to those of the NLRA to its public employers.

Relying on Pennsylvania Labor Relations Bd. v. State College Area Sch. Bd., 337 A.2d 262, 264 (Pa. 1975), TMFPD contends that significant distinctions exist between legislation primarily directed to the private sector and that directed at public employees. In *State College Area Sch. Bd.,* the Pennsylvania Supreme Court commented:

The distinction between the public and private sector cannot be minimized. Employers in the private sector are motivated by the profit to be returned from the enterprise whereas public employers are custodians of public funds and mandated to perform governmental functions as economically and effectively as possible. The employer in the private sector is constrained only by investors who are most concerned with the return for their investment whereas the

public employer must adhere to the statutory enactments which control the operation of the enterprise.

*Id.* at 264. However, other courts have held that NLRB precedent is persuasive in interpreting statutes concerning the public sector that are fashioned on the NLRA. *See, e.g.,* Long Beach Police Officers Ass'n v. City of Long Beach, 203 Cal.Rptr. 494, 501 (Cal.Ct.App. 1984); Barrington Sch. Comm'n v. Rhode Island State Labor Relations Bd., 388 A.2d 1369, 1374 (R.I. 1978). In Fire Fighters Union, Local 1186 v. City of Vallejo, 526 P.2d 971 (Cal. 1974), the California Supreme Court addressed the applicability of NLRB case law as follows:

> The City of Vallejo objects to the use of NLRA precedents because of the alleged differences between employment relations in the public and private sectors. Although we recognize that there are certain basic differences between employment in the public and private sectors, the adoption of legislation providing for public employment negotiation on wages, hours and working conditions just as in the private sector demonstrates that the Legislature found public sector and private sector employment relations sufficiently similar to warrant similar bargaining provisions. We therefore conclude that the bargaining requirements of the National Labor Relations Act and cases interpreting them may properly be referred to for such enlightenment as they may render in our interpretation of the scope of bargaining under the Vallejo charter.

*Id.* at 977.

In Central Mich. Univ. Faculty Ass'n v. Central Mich. Univ., 273 N.W.2d 21, 25 (Mich. 1978), the Michigan Supreme Court stated that "[t]he United States Supreme Court has concluded that one of the primary purposes of the NLRA is labor relations peace and that this objective can best be achieved by adopting a liberal approach to what constitutes a mandatory subject of bargaining." An interpretation of the statute as requiring a relatively broad scope of negotiations also serves to balance the absence of the right to strike by public employees. City of Miami v. F.O.P. Miami Lodge 20, 571 So.2d 1309, 1312 (Fla.Ct.App. 1989). Moreover, this court has looked to federal precedent, including NLRB case law, for guidance in interpreting other provisions in NRS Chapter 288. *See, e.g.,* Reno Police Protective Assoc. v. City of Reno, 102 Nev. 98, 101-02, 715 P.2d 1321, 1323 (1986) (court looked to NLRB cases regarding aggrieved employee's prima facie showing); City of Boulder City v. General Sales Drivers, 101 Nev. 117, 119, 694 P.2d 498, 500 (1985) (court

considered federal precedent in reviewing arbitration award under NRS 288.215).

Based on the foregoing, we conclude that the EMRB properly looked to NLRB precedent in reaching its determination.

*Did the EMRB reasonably apply the "significantly related" test?*

As its final contention, TMFPD asserts that the EMRB did not reasonably apply the "significantly related" test in the instant case. In *Clark Co. Sch. Dist.*, this court stated that in determining whether a subject is mandatorily negotiable the "'significantly related' standard adopted by the EMRB is a reasonable guideline if reasonably applied . . ." *Id.* at 449, 530 P.2d at 119.

Although the decision to layoff employees or disband a fire company "significantly relates" to the employees' wages, hours, and working conditions, TMFPD contends that these issues are reserved to the local government employer. TMFPD asserts that the proposed successorship clause interferes with its ability to terminate operations,[4] or to transfer its operations to another governmental entity. It points out that the EMRB stated in its decision that "[i]f adopted, the clause would require the District to secure a successor agreement to assume the District's obligations under the labor agreement *before* its operations could be sold, conveyed, or transferred to a new employer." By applying the "significantly related" test to matters concerning layoffs and termination of operations, TMFPD asserts that this court would nullify NRS 288.150(3) and NRS 474.470(3). Accordingly, TMFPD asserts that the EMRB did not reasonably apply the "significantly related" test.

TMFPD's argument is unpersuasive. First, the proposed successorship clause only addresses TMFPD's decision to sell, convey or transfer its operations to a new employer. The clause does not address TMFPD's decision to disband or terminate the operations. Second, as previously noted, NRS 288.033 does not require that the parties reach an agreement during collective bargaining negotiations; it only requires that the parties bargain in good faith. If this court requires TMFPD to bargain over the successorship clause, TMFPD and Local 2487 need not reach an agreement. In Lorain City Sch. Dist. Bd. of Educ. v. State Employment Relations Bd., 533 N.E.2d 264 (Ohio 1988), the Ohio Supreme Court stated: "Requiring appellee to bargain does not require that an agreement be reached. It does, however,

---

[4]NRS 474.470(3) provides: "The board of fire commissioners shall . . . [o]rganize, regulate, establish and *disband* fire companies, departments or volunteer fire departments for the districts. . ." (Emphasis added.)

provide a process whereby employees will be consulted about decisions which have profound impact on them and thus, industrial peace will be preserved and promoted." *Id.* at 269. *See also* City of Beloit v. Wisconsin Employment Relations Comm'n, 242 N.W.2d 231, 240 (Wis. 1976) ("all that is required of the employer in collective bargaining is to bargain in good faith with respect to proposals submitted by the collective bargaining agent of the employees. An agreement with respect to a particular proposal is not required.")

For the reasons set forth above, we affirm the judgment of the district court.[5]

---

[5]The Honorable Miriam Shearing, Justice, did not participate in the decision of this matter.