CITY OF NORTH LAS VEGAS AND NORTH LAS VEGAS POLICE DEPARTMENT, APPELLANTS, v. THE STATE OF NEVADA LOCAL GOVERNMENT EMPLOYEE-MANAGEMENT RELATIONS BOARD AND ERIC SPANN-BAUER, RESPONDENTS.

No. 54849

September 29, 2011 261 P.3d 1071

[Rehearing denied February 23, 2012]

*Nicholas G. Waskov*, Acting City Attorney, *L. Steven Demaree*, Chief Deputy City Attorney, and *Chris Davis*, Deputy City Attorney, North Las Vegas, for Appellants.

*Catherine Cortez Masto*, Attorney General, and *Scott R. Davis*, Deputy Attorney General, Carson City, for Respondent State of Nevada Local Government Employee-Management Relations Board.

*Law Office of Daniel Marks* and *Adam Levine* and *Daniel Marks*, Las Vegas, for Respondent Eric Spannbauer.

Before the Court EN BANC.

## OPINION

By the Court, CHERRY, J.:

In this appeal from a district court order denying a petition for judicial review, we first consider the Employee-Management Rela-

tions Board's (EMRB) power to consider respondent Eric Spannbauer's NRS Chapter 288 claims involving prohibited labor practices by a local government employer. In doing so, we determine whether the six-month deadline for filing claims with the EMRB under NRS 288.110(4) is subject to equitable tolling. We conclude that, like the federal statute on which it was based and the limitations periods of other similar remedial statutes, NRS 288.110(4) is a statute of limitations subject to equitable tolling. Therefore, even when a local government employee files a complaint against the employer more than six months after the complained-of act occurred, the complaint might be timely based on the doctrine of equitable tolling. In the matter before us, we conclude that equitable tolling applied to allow the EMRB to hear Spannbauer's claims of NRS Chapter 288 violations because he was diligent in filing his claims after acquiring knowledge of such violations.

We next consider the merits of the EMRB's decision and, thus, whether there was substantial evidence to support the EMRB's findings that Spannbauer's employers, appellants the City of North Las Vegas and the North Las Vegas Police Department, impermissibly interfered with Spannbauer's right to a predisciplinary hearing and discriminated against Spannbauer on the basis of his gender. After carefully reviewing the record, we conclude that substantial evidence supports the EMRB's finding that the Department interfered with the right to a predisciplinary hearing and discriminated against Spannbauer on the basis of his gender. As such, we affirm the district court's order denying the City and the Department's petition for judicial review.

## FACTS

Spannbauer was hired by the North Las Vegas Police Department as a police officer and placed on probationary status for the first 18 months of employment. While still a probationary employee, in 2005, Spannbauer conducted a traffic stop on a female driver for allegedly not coming to a complete stop at a red light. After the driver was unable to provide Spannbauer with proof of registration and insurance, Spannbauer followed her to her nearby residence to retrieve the documents. Thereafter, the driver's husband submitted a complaint to the Department, asserting that Spannbauer had made sexually inappropriate comments when he accompanied the driver to her residence to retrieve the registration and insurance documents. Consequently, the Department's Internal Affairs Division commenced an investigation. While the investigation was ongoing, Spannbauer's probationary period ended, apparently with no adverse consequences precluding him from being confirmed as a nonprobationary police officer. Once the investi-

gation concluded, however, the Department charged Spannbauer with unprofessional conduct and unsatisfactory work performance and placed him on administrative leave.

Although Spannbauer initially was assigned a union representative, before the internal affairs investigation concluded, the representative was removed by Dave Smith, President of the North Las Vegas Police Department Association. Spannbauer was not assigned a new representative, but Mark Paresi, Chief of Police for the Department, told Smith that the Department had the option of treating Spannbauer as a probationary employee, and Smith told Spannbauer that the Department might treat him as a probationary employee. Smith also told Spannbauer that Paresi believed that it was in Spannbauer's best interest to resign, as no other law enforcement agency could look at Spannbauer's file in regard to future employment. Then, Smith advised Spannbauer that he could either resign or proceed with a predisciplinary hearing as a probationary employee. The Department prepared a letter of agreement for Spannbauer to sign. On November 7, 2005, Spannbauer resigned, signing the letter of agreement, in which he agreed that he would neither sue nor make any other claims against the City or the Department in consideration for the internal affairs investigation being closed.

Approximately five months later, on April 5, 2006, Spannbauer learned that, around the same time that he had faced disciplinary charges, a female probationary employee of the Department also had been charged with unprofessional misconduct, albeit while off duty, and had been disciplined for the misconduct after the probationary period was over. The female employee received a two-week suspension without pay. The Department did not consider treating the female employee as a probationary employee, nor did it give her the option to resign.[1]

Approximately two months after learning of the female employee's charges and discipline, on June 1, 2006, Spannbauer filed a complaint with the EMRB against the Association, the City, and the Department, alleging multiple prohibited practices in violation of NRS Chapter 288, including gender discrimination. Although NRS 288.110(4) provides that the EMRB may not consider complaints filed more than six months after the complained-of incident, the EMRB asserted jurisdiction over Spannbauer's claims based upon the doctrine of equitable tolling, apparently concluding that Spannbauer did not know and could not have known about any violation of his rights until he learned of the dif-

---

[1]The incident that gave rise to the female employee's misconduct charges was not discussed in detail in the record. However, Spannbauer testified that the employee and her boyfriend, who was a convicted felon, had been drinking and, while driving, were pulled over by the police, who found marijuana and a pipe in the car.

ferent treatment received by the female employee. An evidentiary hearing was conducted over six days between October 22, 2007, and February 11, 2008.

During the hearing, Smith, the Association president, acknowledged that Spannbauer was a confirmed, nonprobationary employee at the time the disciplinary charges were brought against him. However, Smith stated that Paresi, the Department chief, had asserted that Spannbauer nevertheless could be considered a probationary employee for purposes of discipline, since Spannbauer was a probationary employee when the incident occurred. Also during the hearing, Spannbauer testified that Smith told him that he was going to be treated as a probationary employee and that existing caselaw supported him being treated as a probationary employee. Spannbauer also testified that Smith, based on Paresi's assertions, told him that his law enforcement career would be over if he did not resign, and that the Association would not represent him if he was treated as a probationary employee. Further, Spannbauer testified that he reluctantly signed the letter of agreement based on Smith's opinions. Spannbauer testified that he was not advised about his rights under the collective bargaining agreement between the Association and the City, he was not provided with all of the internal affairs records in order to properly defend himself, he was never advised that he could challenge his probationary status or file a grievance, and neither Smith nor his prior representative filed a grievance regarding policy violations during the internal affairs investigation interviews of other officers. Paresi did not testify at the EMRB hearing.

Initially, the EMRB found that Spannbauer's complaint was filed in a timely manner because Spannbauer did not know and could not have known about a violation of his rights until he learned of the different treatment received by the female employee. The EMRB also found that the City and the Department had committed prohibited labor practices, and that the Association had breached its duty of fair representation. Specifically, the EMRB found, among other things, that: (1) Spannbauer was a local government employee as defined in NRS 288.050, (2) there was no verification of whether caselaw existed supporting the City and the Department treating Spannbauer as a probationary employee, (3) no evidence was presented that Spannbauer's probationary period was extended, (4) the City and Department did not fully investigate this matter, (5) the Department's internal investigation was conducted contrary to its policy, (6) Spannbauer resigned based upon the misinformation conveyed to him concerning his probationary status with the Department, and (7) the City and the Department had improperly treated Spannbauer and the female employee differently in violation of NRS 288.270. The EMRB ordered that the City, Department, and Association refrain from

prohibited labor practices and reinstated Spannbauer to his prior position of paid administrative leave pending a predisciplinary hearing.

The City and the Department petitioned the district court for judicial review. The district court denied the petition, finding that the EMRB's decision was supported by substantial evidence and was neither arbitrary nor capricious. The City, on behalf of itself and the Department, filed this appeal.[2]

## DISCUSSION

### Standard of review

This court, like the district court, gives considerable deference to the EMRB's rulings. *Truckee Meadows v. Int'l Firefighters*, 109 Nev. 367, 369, 849 P.2d 343, 345 (1993); *see also* NRS 233B.135(3)(e), (f). " 'Unless the board should act arbitrarily, unreasonably or capriciously beyond administrative boundaries the courts must give credence to the findings of the board. An agency charged with the duty of administering an act is impliedly clothed with power to construe it as a necessary precedent to administrative action.' " *Local Gov't Emp. v. General Sales*, 98 Nev. 94, 97, 641 P.2d 478, 480 (1982) (quoting *Clark Co. Sch. Dist. v. Local Gov't*, 90 Nev. 442, 446, 530 P.2d 114, 117 (1974)). Nonetheless, we independently review purely legal determinations. *Rio All Suite Hotel & Casino v. Phillips*, 126 Nev. 346, 349, 240 P.3d 2, 4 (2010). Our review is limited to the record before the agency. *Garcia v. Scolari's Food & Drug*, 125 Nev. 48, 56, 200 P.3d 514, 520 (2009); *see* NRS 233B.135(1)(b).

### The EMRB had authority to hear Spannbauer's complaint because the six-month deadline under NRS 288.110(4) is subject to equitable tolling

The City and the Department contend that the EMRB lacked jurisdiction to hear Spannbauer's complaint because the complaint was filed more than six months after any possible adverse employment action and thus was filed past the six-month period for filing claims set forth in NRS 288.110(4). We disagree.

NRS 288.110(4) provides that the EMRB "may not consider any complaint or appeal filed more than 6 months after the occurrence which is the subject of the complaint or appeal." In *Cone v. Nevada Service Employees Union*, 116 Nev. 473, 477 n.2, 998 P.2d 1178, 1181 n.2 (2000), and in *Rosequist v. International Ass'n of Firefighters*, 118 Nev. 444, 447, 49 P.3d 651, 653 (2002), *overruled on other grounds by Allstate Insurance Co. v.*

---

[2]The Association is not a party to this appeal.

*Thorpe*, 123 Nev. 565, 573 n.22, 170 P.3d 989, 995 n.2 (2007), we described, without discussion, NRS 288.110(4)'s six-month deadline as a statute of limitations. Given the purpose behind the statute—to establish a time frame for filing claims with the EMRB—this description as a statute of limitations is not inaccurate. *Cf. Black's Law Dictionary* 1546 (9th ed. 2009) (defining ''statute of limitations'' as ''a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)''). Further, the six-month deadline for instituting claims with the National Labor Relations Board, upon which the EMRB was based, is likewise considered a statute of limitations. *See N.L.R.B. v. Public Service Elec. and Gas Co.*, 157 F.3d 222, 227-28 (3d Cir. 1998) (discussing the six-month limitations period of the National Labor Relations Act (NLRA) section 10(b), 29 U.S.C. § 160(b)); *Truckee Meadows*, 109 Nev. at 375, 849 P.2d at 348-49 (recognizing that, when considering the operation of NRS Chapter 288, this court is guided by federal precedent interpreting the NLRA).

Under this statute of limitations, claims accrue when the violation or injury occurs. With regard to the NLRA, several federal circuit courts apply the ''unequivocal notice'' rule, which means that the limitations period begins to run ''when the victim of an unfair labor practice receives *unequivocal notice* of a final adverse decision.'' *Public Service Elec. and Gas Co.*, 157 F.3d at 227 (internal quotation omitted); *see, e.g., Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1201-02 (11th Cir. 2003); *Bailey v. United Airlines*, 279 F.3d 194, 199 (3d Cir. 2002); *Taylor Warehouse Corp. v. N.L.R.B.*, 98 F.3d 892, 899 (6th Cir. 1996); *U.S. Can Co. v. N.L.R.B.*, 984 F.2d 864, 867 (7th Cir. 1993); *N.L.R.B. v. Drywall*, 974 F.2d 1000, 1003 (8th Cir. 1992); *N.L.R.B. v. Glover Bottled Gas Corp.*, 905 F.2d 681, 684 (2d Cir. 1990). Likewise, we interpret the NRS Chapter 288 limitations period to start running when the alleged victim receives unequivocal notice of a final adverse decision. *See Cone*, 116 Nev. at 477 n.2, 998 P.2d at 1181 n.2 (indicating that the six-month period is triggered when the complainant becomes aware that a prohibited practice actually happened); *see generally Nevada State Bank v. Jamison Partnership*, 106 Nev. 792, 800, 801 P.2d 1377, 1382 (1990) (stating that a ''statute of limitation[s] will not commence to run until the aggrieved party knew, or reasonably should have known, of the facts giving rise to the breach'').

With regard to Spannbauer's claims, the period would have started at least by the time Spannbauer resigned on November 6, 2005. But like other statutes of limitations, NRS 288.110(4)'s deadline is subject to the equitable defenses of waiver, estoppel,

and tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 395 n.11 (1982) (explaining that because Title VII claims (like NRS Chapter 288 claims) were modeled after the NLRA's remedial provisions, Title VII, like the NLRA, includes a statute of limitations subject to equitable defenses).

Here, Spannbauer asserts that his claims were subject to equitable tolling. As recognized by the Ninth Circuit Court of Appeals, equitable tolling "focuses on 'whether there was excusable delay by the plaintiff: If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.'" *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (quoting *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002)); *see also Black's Law Dictionary* 618 (9th ed. 2009) (equitable tolling is defined as "[t]he doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired"). The EMRB's reasonable conclusion that equitable tolling is permitted with respect to claims that are before it is entitled to deference. *General Sales*, 98 Nev. at 98, 641 P.2d at 480.

We have previously recognized equitable tolling for discrimination claims addressed to the Equal Rights Commission under NRS Chapter 613. *Copeland v. Desert Inn Hotel*, 99 Nev. 823, 826, 673 P.2d 490, 492 (1983) (providing that "procedural technicalities that would bar claims of discrimination will be looked upon with disfavor"). In *Copeland*, we stated that the following factors, among any other relevant considerations, should be analyzed when determining whether equitable tolling will apply: the claimant's diligence, knowledge of the relevant facts, reliance on misleading authoritative agency statements and/or misleading employer conduct, and any prejudice to the employer. *Id.*

When considering these factors within the context of this case, it becomes clear that justice requires the statute of limitations to be tolled. In this case, Spannbauer learned on April 5, 2006, that the City and the Department had treated a female employee under investigation, and ultimately charged with unprofessional conduct, differently than it had treated him, even though both investigations and further charges were based on conduct that had occurred when they were probationary employees. In particular, evidence in the record demonstrates that, while Spannbauer was threatened with discipline as a probationary employee, the female employee was not. Less than two months after discovering this information, Spannbauer diligently filed his EMRB complaint. In doing so,

Spannbauer filed his complaint in an expeditious manner after obtaining knowledge of an NRS Chapter 288 violation and reason to question the Department's prior statements regarding his probationary status. Further, prejudice to the City and the Department is lacking. *See Copeland,* 99 Nev. at 826, 673 P.2d at 492. Thus, equity requires that the NRS 288.110(4) six-month statute of limitations be tolled to give Spannbauer an opportunity to file his prohibited labor practices claims with the EMRB.

### Merits of the EMRB decision

After addressing the threshold issue of the EMRB's authority to hear Spannbauer's complaint, we must consider the EMRB's decision on the merits, including whether substantial evidence supports its findings that the City and the Department interfered with, restrained, and/or coerced Spannbauer into forgoing his right to a predisciplinary hearing and, in so doing, discriminated against Spannbauer.

#### Interference with Spannbauer's right to a predisciplinary hearing

The City and the Department contend that substantial evidence does not support the EMRB's conclusion that the Department improperly deprived Spannbauer of a predisciplinary hearing. While conceding that Spannbauer might have been told by his union representative that the Department was considering treating him as a probationary employee, the City and the Department deny any further conversation on the subject with Spannbauer or his representative until being informed that Spannbauer had decided to resign. And pointing out that Spannbauer *voluntarily* resigned, the City and the Department argue that nothing in the record supports the conclusions that resignation was "thrust upon" Spannbauer and that the City and the Department interfered with, coerced, or restrained Spannbauer from pursuing a predisciplinary hearing. We disagree.

The record reveals that the City and the Department discouraged Spannbauer from proceeding with a hearing and prompted his resignation by indicating that he might be treated as a probationary employee, which could severely limit his future career prospects. Moreover, he was allowed to resign only after signing a waiver of his rights to pursue claims against the City and the Department. By doing so, the City and the Department interfered with Spannbauer's right to a predisciplinary hearing, which is a violation of his undisputed rights under the collective bargaining agreement between the City and the Department. Accordingly, the

EMRB's findings are not arbitrary, unreasonable, or capricious, and there exists substantial evidence to support its finding that the City and the Department violated Spannbauer's right to proceed through the grievance process.

### Gender discrimination

The City and the Department also contend that the EMRB erred in finding that they discriminated against Spannbauer on the basis of his gender. It is a prohibited labor practice for an employer to willfully discriminate on the basis of sex. NRS 288.270(1)(f). The focus of our inquiry is whether the Department treated Spannbauer less favorably than his female colleague because of his gender. *Apeceche v. White Pine Co.*, 96 Nev. 723, 726, 615 P.2d 975, 977 (1980). The EMRB concluded that the testimony presented established that the City and the Department treated two officers differently without a rational reason for doing so. The EMRB found that both incidents leading to the internal investigations occurred during the officers' probationary periods and that any subsequent discipline would not occur until the officers were confirmed. Additionally, the EMRB found that the female officer was never given the option of resigning. We conclude that the EMRB did not err in finding that the City and the Department discriminated against Spannbauer on the basis of his gender.

A prima facie case of unlawful discrimination is established if the employees can "show that (1) they belonged to a protected class; (2) they were qualified for their jobs; (3) they were subjected to an adverse employment action; and (4) similarly situated employees not in their protected class received more favorable treatment." *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006); *see Apeceche*, 96 Nev. at 726, 615 P.2d at 977 (listing similar factors in establishing a prima facie case of discrimination); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973) (providing that "the prima facie proof required from [one plaintiff] is not necessarily applicable in every respect to differing factual situations"). "Once a prima facie case of discrimination is established, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions." *Apeceche*, 96 Nev. at 726, 615 P.2d at 977; *see also McDonnell Douglas*, 411 U.S. at 802.

The parties do not dispute that the first two prongs were met—that Spannbauer is a member of a protected class and that he was qualified for the job—thus, we do not consider those prongs. As to

the third prong, although the City and the Department argue that Spannbauer did not receive an adverse employment action because he resigned, as noted above, substantial evidence established that his resignation was tendered in response to misleading factual statements about his probationary status. Thus, his resignation constitutes an adverse employment action.

The major contested issue here is prong four—whether a similarly situated female employee was treated more favorably. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). There must be " 'a reasonably close resemblance of the facts and circumstances of the plaintiff's and comparator's cases, rather than a showing that both cases are identical.' " *Ruiz v. County of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). Moreover, common sense dictates that employees do not always have to engage in the exact same offense as a prerequisite for finding them similarly situated. *Lynn v. Deaconess Medical Center-West Campus*, 160 F.3d 484, 488 (8th Cir. 1998), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). "[E]mployees need not be identical; they must simply be similar 'in all material respects.' " *Nicholson v. Hyannis Air Service, Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009) (emphasis omitted) (quoting *Moran*, 447 F.3d at 755). While the "plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered similarly-situated[,] . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the relevant aspects." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (emphasis and internal quotations omitted).

In determining whether two employees are similarly situated, we adopt the analytical framework espoused by the Second Circuit Court of Appeals in *Ruiz v. County of Rockland*, 609 F.3d at 493-94, and the Seventh Circuit Court of Appeals in *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). A court must look at all relevant factors, depending upon the context of the case, and such factors may include: (1) whether the employees were subject to the same performance evaluation standards; (2) whether the employees engaged in comparable conduct; (3) whether the employees dealt with the same supervisor; (4) whether the employees were subject to the same disciplinary standards; and (5) whether the employees had comparable experience, education, and qualifications, if the employer took these

factors into account in making its decision. *Ruiz*, 609 F.3d at 493-94; *Patterson*, 281 F.3d at 680.

Here, the inquiry into whether Spannbauer and the female employee were similarly situated presents a question of fact. *Beck v. United Food and Commercial Workers Union*, 506 F.3d 874, 885 n.5 (9th Cir. 2007). "A court may not substitute its judgment for that of the administrative agency as to the weight of the evidence on questions of fact." *State, Dep't of Mtr. Vehicles v. Becksted*, 107 Nev. 456, 458, 813 P.2d 995, 996 (1991).

We conclude that the EMRB did not abuse its discretion in finding that Spannbauer established a prima facie case of discrimination on the basis of his gender because substantial evidence was presented demonstrating that a female colleague facing similar circumstances with similar qualifications was treated more favorably in all relevant aspects in satisfaction of the fourth prong of the unlawful-discrimination test. Despite the fact that Spannbauer's conduct occurred while on duty and the female officer's conduct occurred while off duty, both officers were alleged to have exhibited unprofessional conduct. Both officers were subject to the same 18-month probationary period and were under Chief Paresi's supervision. In addition, both officers were subject to an internal affairs investigation. Moreover, both officers were probationary employees when their misconduct occurred, but received or would have received any discipline once they were confirmed. Although the situations surrounding Spannbauer and the female officer are not identical, the EMRB's conclusion that they were similarly situated is reasonable and supported by substantial evidence, as they have similar jobs, were investigated for reasonably similar conduct and charged with actions unbecoming of a police officer, and were both probationary officers of the Department. However, Spannbauer was essentially forced to resign before receiving any discipline, whereas the female officer was not made to resign, but allowed to face discipline, for which she was given a two-week suspension without pay but then was able to return to her employment. Thus, the fourth prong was met. Moreover, the City and the Department failed to rebut Spannbauer's prima facie case by establishing a legitimate, nondiscriminatory reason for treating Spannbauer differently from the female officer. *Ruiz*, 609 F.3d at 492 (citing *Holcomb v. Iona College*, 521 F.3d 130, 140 (2d Cir. 2008)). Therefore, there is substantial evidence to support the EMRB's finding that the City and the Department discriminated against Spannbauer on the basis of his gender in violation of NRS 288.110(1)(f). For the foregoing reasons, we also conclude that the

EMRB appropriately disregarded the resignation agreement, including the covenant not to sue, as there was substantial evidence that the agreement was a culmination of prohibited practices in violation of NRS 288.270(1).

Accordingly, we affirm the district court's order denying the City and the Department's petition for judicial review.[3]

SAITTA, C.J., and DOUGLAS, GIBBONS, PICKERING, HARDESTY, and PARRAGUIRRE, JJ., concur.

---

[3]We decline to address Spannbauer's arguments regarding the district court's grant of a stay, as Spannbauer did not move to lift the stay and his arguments are not properly before this court in the context of the City and the Department's appeal from the district court's final order.