09-0759-cv
Ruiz v. County of Rockland

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2009

(Argued: December 22, 2009                    Decided: June 25, 2010)

Docket No. 09-0759-cv

_____

JORGE RUIZ,

*Plaintiff-Appellant,*

v.

COUNTY OF ROCKLAND and MARY ANN WALSH-TOZER,

*Defendants-Appellees.*

_____

CALABRESI and POOLER, *Circuit Judges*, and KAHN, *District Judge*.[*]

_____

Plaintiff Jorge Ruiz appeals the February 11, 2009 order of the United States District

Court for the Southern District of New York (Eginton, *J.*) granting defendants County of

Rockland and Mary Ann Walsh-Tozer summary judgment on plaintiff's action for national origin

and race discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,

_____

[*]    The Honorable Lawrence E. Kahn, United States District Court for the Northern
District of New York, sitting by designation.

1

*et seq.*; 42 U.S.C. § 1981; and the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. We agree with the district court that Mr. Ruiz failed to raise an inference of discrimination. However, we wish to clarify the second prong of the *prima facie* case: whether Mr. Ruiz was qualified for his position. We conclude that the district court erred in finding that Mr. Ruiz was not qualified for his position based on evidence of Mr. Ruiz's misconduct. Affirmed.

> MICHAEL SUSSMAN (Christopher Watkins, *on the brief*), Sussman & Watkins, Goshen, NY, for Plaintiff-Appellant.
>
> ROBERT WEISSMAN, Saretsky Katz Dranhoff & Glass, L.L.P., New York, NY, for Defendants-Appellees.

_____

POOLER, Circuit Judge:

Plaintiff Jorge Ruiz appeals the February 11, 2009 order of the United States District Court for the Southern District of New York (Eginton, *J.*) granting defendants County of Rockland and Mary Ann Walsh-Tozer summary judgment on plaintiff's action for national origin and race discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. § 1981; and the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. The district court concluded that Mr. Ruiz had failed to establish a *prima facie* case of discrimination. We agree that Mr. Ruiz failed to raise an inference of discrimination and we therefore affirm the decision of the district court. However, we wish to clarify the second prong of the *prima facie* case: whether Mr. Ruiz was qualified for his position. We conclude that the district court erred in finding that Mr. Ruiz was not qualified for his

2

position based on the evidence of Mr. Ruiz's misconduct.  Instead, the court should have evaluated such evidence in the context of defendants' legitimate, non-discriminatory reason for his termination.

## BACKGROUND

Plaintiff Jorge Ruiz is a Hispanic man of Puerto Rican origin.  He was hired as a mental health aide with the Rockland County Department of Mental Health in February 1996.  In January 2000, he was promoted to the position of Mental Health Worker I and in November 2004, he was promoted to Mental Health Worker II, a low level supervisory position.  All parties agree that as a Mental Health Worker II, Mr. Ruiz had an obligation to report allegations of patient abuse and employee misconduct to his supervisors.  Defendant Mary Ann Walsh-Tozer was the Commissioner of Mental Health for Rockland County, New York at all times relevant to this appeal.

From his hire until November 2004, Mr. Ruiz received satisfactory performance evaluations.  However, on November 15, 2004, shortly after his promotion to Mental Health Worker II, a patient accused Mr. Ruiz of sexual assault.  He was suspended with pay pending an investigation, but returned to work after Kayton Kurowski, an assistant to Commissioner Walsh-Tozer, recommended that no administrative action be taken because the patient's allegations could not be substantiated.

In June 2005, two of Mr. Ruiz's female co-workers, M.D. and E.B., accused him of sexual harassment.  Margot Vasquez, then-director of the Rockland County Office of Employee Rights and Equity Compliance, conducted an investigation into the complaints.  During his interview with Ms. Vasquez on July 27, 2005, Mr. Ruiz admitted to hugging and kissing M.D.

3

and E.B. when he greeted them in the morning and said goodbye in the evening, but claimed that they had sometimes initiated the contact and that he was not aware that it made them uncomfortable. He denied the more serious allegations of sexual harassment.

In a submitted statement, Mr. Ruiz also made several allegations of his own. He claimed that he had witnessed many instances of inappropriate behavior by staff members, including M.D. and E.B., that had taken place in front of other supervisors and patients. Mr. Ruiz also accused M.D. of having sexual relations with a patient, E.H. As support for this accusation, he recounted that M.D. had told him that Nancy Panicucci, Director of Acute Services, had met with her about a rumor that she was dating a patient. M.D. explained to Ms. Panicucci that she and E.H. had been friends prior to his admission and that their relationship had been strictly professional since he had been admitted. Ms. Panicucci accepted her explanation and the matter was dropped. However, Mr. Ruiz stated that he subsequently heard from several other sources that M.D. was having a sexual relationship with E.H.

On July 28, 2005, while Ms. Vasquez was in the process of conducting her investigation, E.H. reported to Department of Mental Health personnel that he was having a sexual relationship with M.D. On the same day that E.H. made the accusation, M.D. submitted a letter of resignation effective August 11, 2005. On July 30, 2005, M.D. was suspended pending an investigation into the allegations. The investigation never occurred because M.D. resigned before she could be interviewed and never returned to work.

In a report dated October 31, 2005, Ms. Vasquez concluded that M.D. and E.B.'s allegations of sexual harassment could not be substantiated. The other employees whom Ms. Vasquez interviewed as part of the investigation did not confirm M.D. and E.B.'s allegations of

4

sexual harassment. However, one interviewee thought that Mr. Ruiz was spending too much time with female staff members. Because Mr. Ruiz's behavior gave the appearance of impropriety, Ms. Vasquez recommended that he be moved to another position within the department and closely supervised.

In November 2005, Commissioner Walsh-Tozer asked Mr. Kurowski to review Ms. Vasquez's report, at which point Mr. Ruiz's knowledge about M.D. and E.H.'s affair, as well as his observation of other employees' inappropriate behavior, came to light. Mr. Kurowski interviewed Mr. Ruiz and he reaffirmed the statements he made to Ms. Vasquez. Mr. Kurowski recommended administrative action be taken on the grounds that Mr. Ruiz had failed to report allegations of patient abuse and employee misconduct. As a result, Commissioner Walsh-Tozer preferred two charges against Mr. Ruiz: (1) gross misconduct for failure to report allegations of patient abuse (M.D.'s relationship with E.H.) and (2) gross misconduct for failure to report inappropriate behavior of co-workers in the presence of patients. Mr. Ruiz had the option to choose either binding arbitration or a disciplinary hearing under § 75 of the Civil Service Law. Mr. Ruiz chose to have a disciplinary hearing and, through counsel, denied the charges.

The same day that Mr. Kurowski made his recommendation that administrative action should be taken against Mr. Ruiz, a patient, J.C., reported to Department of Mental Health personnel that Mr. Ruiz had raped her in November 2001. In addition to informing the Rockland Country Sheriff's Department, Commissioner Walsh-Tozer amended the charges to include two new charges: rape of a patient and sexual abuse of a patient. The County sought Mr. Ruiz's termination on the basis of the four charges against him.

Commissioner Walsh-Tozer designated Ira Lobel as the hearing officer for the disciplinary

5

hearing. After four days of hearings, in which Mr. Ruiz, M.D., J.C., and many of Mr. Ruiz's coworkers testified, Mr. Lobel issued his recommendations, noting that "neither side objected to the fairness of [the] proceedings." In his recommendations, Mr. Lobel exonerated Mr. Ruiz of the rape and sexual assault charges, finding that J.C. was not credible and the County had not sustained its burden of proof. However, he found Mr. Ruiz guilty of failing to report his knowledge of M.D.'s sexual relationship with E.H., for which he recommended a 30- day suspension. He did not recommend termination because "[i]t appears that other supervisors and employees knew parts of these specifications and failed to act," concluding that "[w]hile this alone cannot obviate [Mr. Ruiz] from his responsibility, it can be taken into account to assess the appropriate discipline." Finally, he found Mr. Ruiz guilty of failing to report inappropriate behavior of his coworkers, but also found that the inappropriate behavior was both commonplace and common knowledge among employees. Because Mr. Ruiz had been "singled out" for punishment on this charge, Mr. Lobel concluded that Mr. Ruiz should be punished by a written warning only.

After reviewing Mr. Lobel's findings and recommendations, Commission Walsh-Tozer adopted Mr. Lobel's findings of fact except as to the charge of failing to report inappropriate behavior of coworkers. On that charge, Commissioner Walsh-Tozer stated that:

> I find as fact based upon the record that the misconduct you failed to report was not common knowledge and that you were not singled out for discipline . . . I find as fact that your knowledge of the extent and depth of the misconduct was unique and that, as a supervisor, your failure to report perpetrated misconduct you knew to be wrong and potentially injurious to both staff and patients.

On the charge of failing to report M.D.'s sexual relationship with a patient, Commissioner Walsh-Tozer found that:

6

> [Y]ou were aware first hand of a relationship which you knew constituted patient abuse between employee M.D. and patient E.H. Your knowledge and deliberate failure to report constituted, in my opinion, a most serious breach of your duty to protect the well-being and safety of patients, particularly those suffering from mental illness. You intentionally permitted a patient to continue to be abused by an employee. Such conduct is inexcusable.

Commission Walsh-Tozer determined that termination was appropriate for both charges. Mr. Ruiz did not appeal Commissioner Walsh-Tozer's decision.

Subsequently, Mr. Ruiz brought suit against the County of Rockland and Commissioner Walsh-Tozer in the Southern District of New York alleging race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.; 42 U.S.C. § 1981; and the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. Defendants moved for summary judgment and on February 11, 2009, the district court granted defendants' motion and dismissed the case in its entirety, concluding that Mr. Ruiz had failed to make out a *prima facie* case of race and national origin discrimination. *Ruiz v. County of Rockland*, No. 06-cv-9868, 2009 WL 1616508 (S.D.N.Y. Feb. 11, 2009). This appeal followed.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*, drawing all inferences in favor of the nonmoving party. *See SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).

7

Both Mr. Ruiz's Title VII claims and his claims for race and national origin discrimination under Sections 1981 and 1983 are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004). Under this framework, a plaintiff must first establish a *prima facie* case of discrimination. *Holcomb*, 521 F.3d at 138. In the context of an alleged discriminatory discharge, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. *Id*. Once a plaintiff meets this initial burden, the burden then shifts to the defendant to offer a legitimate non-discriminatory reason for the termination. *Id.* at 140. If defendant does so, the burden returns to the plaintiff to show that the real reason for plaintiff's termination was his race and national origin. *Id.* at 141. The district court held that Mr. Ruiz had failed to establish the second and fourth prongs of the *prima facie* case. We agree with the district court with respect to prong four but disagree with respect to prong two of the *prima facie* case. We consider each prong *seriatim*.

## I.

Mr. Ruiz argues that the district court erred in concluding that he was not qualified for his position and presents as evidence his performance evaluations, which all state that he performed his job satisfactorily. The district court held that Mr. Ruiz's admitted misconduct precluded a finding that he was qualified for his position:

> He has admitted that he witnessed behaviors that he should have reported and failed to do so. Further, his failure to do so strikes at the heart of his role insofar as his job is that of a supervisor. Therefore, despite his positive reviews prior to his

8

promotion, his failures to report what should have been reported undermine his qualifications to perform his job.

*Ruiz v. County of Rockland*, 2009 WL 1616508, at * 8.

In *Owens v. New York City Housing Authority*, we made clear that there is a distinction between unsatisfactory job performance and misconduct, reasoning that "misconduct may certainly provide a legitimate and non-discriminatory reason to terminate an employee," but that this issue is distinct from "the issue of minimal qualification to perform a job." 934 F.2d 405, 409 (2d Cir. 1991). Instead, we explained that the inquiry should focus on the plaintiff's competence and whether he "possesses the basic skills necessary for performance of [the] job." *Id*. In *Thornley v. Penton Publishing, Inc*., however, we clarified that *Owens* did not remove plaintiff's burden of demonstrating "satisfactory job performance, in accordance with the particular employer's criteria for satisfactory performance." 104 F.3d 26, 30 (2d Cir. 1997). We reiterated that "[d]epending on the employer's standards, it is at least theoretically possible that an employee committed some misconduct and yet, in the aggregate, performed satisfactorily." *Id*. In short, whether misconduct precludes a finding that a plaintiff is qualified for his position depends both on the *kind* of misconduct, i.e. whether it speaks to the plaintiff's competence and job skills, and the *seriousness* of the misconduct, i.e. whether "in the aggregate" plaintiff still performed his job satisfactorily.

As *Owens* recognized, however, an employee's alleged or admitted misconduct is often inextricably intertwined with the employer's legitimate, non-discriminatory reason for the employee's termination. This case provides a perfect example. Mr. Ruiz's performance evaluations, both before and after his promotion to Mental Health Worker II, indicate that he

9

performed his job satisfactorily. The misconduct that formed the basis of the district court's finding that he was not qualified for his job – his failure to report patient abuse and other employees' misconduct – also formed the basis of some of the disciplinary charges against him. Mr. Ruiz admits that he was required to report patient abuse and employee misconduct, but he argues that this particular criteria for satisfactory performance was applied in a discriminatory manner. Although we agree with the district court that Mr. Ruiz's situation is distinguishable from that of other employees,[1] there is no question that other employees failed to report employee misconduct and were not disciplined. In such a situation, it is inappropriate to evaluate the employee's misconduct in the context of the *prima facie* case. The reason is simple: if the employer is applying its criteria for satisfactory job performance in an inconsistent, arbitrary, or discriminatory manner, then there is a question of fact as to whether the criteria reflect the employer's "honestly-held expectations," *Thornley*, 104 F.3d at 30, or whether the criteria merely provided a pretext for unlawful discrimination. *See id.* ("The jury is certainly entitled to reject the standards claimed by the employer on the grounds that these standards were pretextual - i.e., they were not held in good faith." (citing *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465-66 (2d Cir. 1989)). This is particularly the case when the employee presents evidence that he otherwise performed his job satisfactorily, as Mr. Ruiz did with his performance evaluations. *See Owens*, 934 F.2d at 409 (finding it relevant that plaintiff had received positive evaluations from individuals other than her supervisors whom she accused of discrimination).

---

[1] As we recount in Section II, Mr. Ruiz is not similarly situated to other employees because of his admission that he also participated in the employee misconduct as well as the fact that Mr. Ruiz faced other charges – including sexual harassment, sexual assault, and rape – that other employees did not face.

10

Of course, as we made clear in *Owens*, even if evidence of employee misconduct is not relevant to plaintiff's *prima facie* case, it may still be used by an employer to show that it had a legitimate, non-discriminatory reason for plaintiff's termination. But the step at which the court considers such evidence is important. A plaintiff can rebut the employer's proffered legitimate, non-discriminatory reason by proving that discrimination played a role in the employer's decision, but no amount of evidence permits a plaintiff to overcome a failure to make out a *prima facie* case. Here, there is a question of fact as to whether Mr. Ruiz was competent to perform his supervisory duties or whether he simply failed to do so. There is also a question of fact as to whether compliance with the reporting requirements was indeed an "honestly-held" criterion for satisfactory performance, given the fact that employee misconduct was widespread and only Mr. Ruiz was punished for failing to report it. Hence, the district court should have concluded that disputed issues of fact precluded granting summary judgment to defendants on this prong of the *prima facie* case.

## II.

With respect to the fourth prong of the *prima facie* standard, Mr. Ruiz argues that similarly situated employees were treated differently than him, raising an inference of discrimination. "A showing of disparate treatment – that is, a showing that an employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' – is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). An employee is similarly situated to co-employees if they were (1) "subject to the same performance evaluation and discipline standards" and (2) "engaged in comparable conduct." *Graham v. Long Island R.R.*, 230 F.3d 34,

11

40 (2d Cir. 2000). "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Id*. In other words, the comparator must be similarly situated to the plaintiff "in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). Defendants argue, and the district court held, that no other employee was similarly situated to Mr. Ruiz. We agree.

Mr. Ruiz identifies three employees who he claims committed the same or more serious misconduct but who were not disciplined. The first is M.D., who Mr. Ruiz alleges went unpunished for having a sexual relationship with a patient while he was punished for failing to report that relationship. There is one problem with this comparison: M.D. preemptively resigned before she could be investigated and disciplined. Mr. Ruiz presents no evidence suggesting that M.D. would have been allowed to remain in her job if she had not resigned, or that defendants would not have treated Mr. Ruiz the same way if he had resigned. In the end, both M.D. and Mr. Ruiz lost their jobs, the most serious form of discipline to which they could have been subjected.

Mr. Ruiz also alleges that George Bates was similarly situated to him because he was also a supervisor and had knowledge of both M.D.'s relationship with a patient and of inappropriate behavior between coworkers. It is true that the hearing officer found that Mr. Ruiz had been "singled out" for punishment on the charge of failing to report inappropriate behavior of his coworkers and that Mr. Ruiz named George Bates as another supervisor who had observed the inappropriate behavior and had failed to report it. However, as defendants point out, there are many factors that distinguish Mr. Bates from Mr. Ruiz. First, unlike Mr. Ruiz, Mr. Bates did not admit to seeing inappropriate behavior and no one, not even Mr. Ruiz, accused Mr. Bates of

12

participating in the inappropriate behavior. Mr. Ruiz, on the other hand, admitted to observing *and* participating in inappropriate behavior. Moreover, the hearing officer found Mr. Bates largely credible – and found Mr. Ruiz incredible – on the issue of what Mr. Bates knew about M.D. and E.H.'s relationship. Thus, even if Mr. Bates had observed inappropriate behavior of coworkers to the same extent as Mr. Ruiz, he would still not be similarly situated with respect to the failure to report M.D.'s misconduct. This is so even if the hearing officer erred in making his credibility determination, since Commissioner Walsh-Tozer relied on Mr. Lobel's findings of fact in reaching her decision. *See Collins v. N.Y.C. Transit Authority*, 305 F.3d 113, 115 (2d Cir. 2002) (findings of fact made by a neutral decision-maker have "probative weight regarding the requisite causal link between an employee's termination and the employer's illegal motive"). Finally, even if Mr. Ruiz's testimony is credited as to what Mr. Bates knew about M.D. and E.H.'s relationship, it is undisputed that Mr. Ruiz had additional information that Mr. Bates did not have.

The third employee, Nancy Panicucci, is likewise not similarly situated. Ms. Panicucci had only limited information about M.D. and E.H.'s relationship: she heard second-hand that M.D. and E.H. had some form of personal relationship. The information she received was vague and unsubstantiated. Even with that limited information, Ms. Panicucci fulfilled her duties by meeting with M.D., Ms. Vaccarino, and Mr. Bates about the allegation, which M.D. denied to Ms. Panicucci's satisfaction. Unlike Mr. Ruiz, who had a duty to report inappropriate behavior, Ms. Panicucci was a person to whom reports of inappropriate behavior were made, and she satisfied her duty by meeting with M.D.

Finally, none of the employees Mr. Ruiz cites as comparators were accused of sexual

harassment, sexual abuse, and rape. It is true that the County failed to sustain its burden of proof on the sexual abuse and rape charges and Ms. Vasquez was unable to corroborate M.D. and E.B.'s allegations of sexual harassment. Indeed, Mr. Ruiz may be innocent of these charges. However, the fact that Mr. Ruiz had been accused by multiple patients and co-workers of inappropriate and unlawful behavior clearly distinguishes Mr. Ruiz from other employees who were not the subject of such accusations. While Mr. Ruiz may be able to show that the real reason he was terminated was because Commissioner Walsh-Tozer believed these other allegations to be true, he has provided no evidence to suggest that she was motivated by Mr. Ruiz's race and national origin. Because Mr. Ruiz has not identified a similarly-situated employee who faced equally serious allegations and whom Commissioner Walsh-Tozer allowed to remain on the job, Mr. Ruiz has failed to raise an inference of discrimination.

## CONCLUSION

Because we agree that Mr. Ruiz has failed to establish a *prima facie* case of discrimination, the district court's decision is **AFFIRMED**.

14