10-1311-cv
Carroll v. City of Mount Vernon

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 27th day of December, two thousand eleven.

Present:
> DENNIS JACOBS,
> > *Chief Judge,*
> PIERRE N. LEVAL,
> ROBERT A. KATZMANN,
> > *Circuit Judges,*

_____

JOSEPH J. CARROLL,

> *Plaintiff-Appellant,*

> v.                                    No. 10-1311-cv

CITY OF MOUNT VERNON, ERNEST D. DAVIS, individually and as Mayor of the City of Mount Vernon, and CITY OF MOUNT VERNON DEPARTMENT OF FIRE,

> *Defendant-Appellees.*

_____

For Plaintiff-Appellant:         ANDREW P. FLEMING, Chiacchia & Fleming, LLP,
                                 Hamburg, New York

For Defendant-Appellees:      HOWARD M. MILLER, Bond, Schoeneck & King, PLLC, Garden City, New York

_____

Appeal from the United States District Court for the Southern District of New York (Seibel, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court dated April 30, 2010, be and hereby is **AFFIRMED**.

Plaintiff Joseph Carroll appeals from a judgment of the United States District Court for the Southern District of New York (Seibel, *J.*), dismissing his complaint against the City of Mount Vernon (the "City"), the City of Mount Vernon Fire Department (the "Fire Department"), and Ernest D. Davis, a former mayor of the City of Mount Vernon. Carroll, who is white, claimed that the defendants failed to promote him to Fire Lieutenant because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Equal Protection Clause of the Constitution. The district court dismissed the complaint after denying Carroll's motion for partial summary judgment on the issue of the defendants' liability and granting the defendants' motion for summary judgment. On appeal, Carroll challenges both rulings.

*Background*

The evidence, viewed in the light most favorable to Carroll, supports the following findings of fact. On March 27, 2004, the Fire Department administered a civil service examination, the results of which would determine which firefighters would be considered for promotion to the rank of Fire Lieutenant during the next two years, and the order in which they

would be considered. (New York Civil Service Law § 61-1 requires that Fire Lieutenant vacancies be filled by one of the three candidates who scored highest on a civil service examination.) The list derived from the results of that examination (the "2004 List") became effective on July 19, 2004, and was to expire on July 19, 2006. Carroll took the examination and ranked ninth. In January 2006, because a new list would not be ready for implementation, the expiration date of the 2004 List was extended by one year, to July 19, 2007. On March 24, 2007, the Fire Department administered another civil service examination. In June 2007, before the list derived from the results of the March 2007 examination ("the 2007 List") was certified, two Fire Lieutenant positions became available. By that time, due to the intervening promotions of those who had initially outranked him on the 2004 List, Carroll had moved up from ninth to second rank on the list. Of the top four candidates on the 2004 List at that time, none was black.

On Tuesday, July 3, 2007, Carroll and Justin Chase, the white firefighter then ranked first on the 2004 List, were invited to come to the Mayor's office on Thursday, July 5, 2007, to interview for an appointment to Fire Lieutenant. Also on July 3, 2007, Curtis Bracy, the president of the Vulcan Society of Westchester County, Inc. (the "Vulcan Society"), a fraternal organization that represents the interests of black firefighters, wrote a letter to the Mayor objecting to filling the two Fire Lieutenant vacancies from the 2004 List. Bracy asserted that, under the terms of a federal consent decree that bound the City, the effective period of a civil service list of Fire Lieutenant candidates could not be extended beyond two years without the consent of the Vulcan Society and the federal government, that the Vulcan Society had not consented and would not consent to an extension, and that therefore any appointments from the

2004 List would violate the consent decree.[1] He described the circumstances surrounding the "impending promotions" of Carroll and Chase as "troubling," especially because the 2007 List would replace the 2004 List as early as July 10, 2007. Bracy's letter said that the Vulcan Society would take remedial steps, "including application to the Court, to void and vacate" any promotions from the 2004 List. On the next day, Wednesday, July 4, the Vulcan Society's counsel sent an e-mail to Terence O'Neil, the City's counsel, reiterating the concerns expressed in Bracy's letter.

When Carroll appeared for his interview at the Mayor's office on Thursday, July 5, members of the Vulcan Society were there protesting the appointment of white candidates from the 2004 List. The Mayor's chief of staff, John DiBlasi, told Carroll that although "everything looked good" for his promotion, "it was not going to happen" because of the Vulcan Society's objections.

On Monday, July 9, however, two things happened. (1) The Vulcan Society's counsel sent an e-mail to O'Neil, the City's counsel, informing him that after further review, the Vulcan Society had concluded that the consent decree did not require the City to obtain the Vulcan Society's consent to extend the effective period of the 2004 List, and that the Vulcan Society was withdrawing its objection "on that basis" to appointments from the 2004 List. (2) The 2007 List became effective, replacing the 2004 List. Because Carroll ranked sixteenth on the 2007 List, he was ineligible to be appointed to either of the two vacant Fire Lieutenant positions once

[1]The consent decree to which Bracy referred appears to be a consent judgment reached in 1980 between the Vulcan Society and the City after the Vulcan Society and others sued the City in the United States District Court for the Southern District of New York for discriminating against black firefighters in violation of Title VII.

that list went into effect.[2]

Carroll brought a charge before the Equal Employment Opportunity Commission. On November 5, 2007, the City's counsel wrote a letter in response. The letter explained that "there were several legitimate, non-discriminatory reasons why Mr. Carroll was not promoted by the Fire Department in July of 2007." Letter from Christopher T. Kurtz to EEOC at 2 (Nov. 5, 2007). According to the letter, on July 5, 2007, the day of Carroll's interview at the Mayor's office, members of the Vulcan Society raised to DiBlasi three objections to the promotion of Carroll and Chase: (1) use of the 2004 List to make appointments would violate the federal consent decree, (2) the 2004 List was expired or about to expire, and (3) other individuals should be interviewed for the open positions. *Id.* at 3. DiBlasi told the Vulcan Society members that he and the Mayor had not known of the objections and that he was "concerned about the process and the potential for litigation." *Id.* at 4. As a result, the objections were referred to the City's Law Department for evaluation. Four days later, before the Law Department responded to the inquiry, the new 2007 List went into effect, mooting the issue of promotions from the 2004 List. *Id.*

The City counsel's letter explained that, although the Vulcan Society ultimately withdrew its objection that use of the 2004 List would have violated the consent decree, its objection that additional candidates should be interviewed was valid. The letter stated that the top three candidates on a certified candidate list must be interviewed before an appointment "legally" can be made, and that Frank Ramos, the third-ranked candidate on the 2004 List on July 5, 2007, had not been contacted. *Id.* at 6.

_____

[2] The two positions were ultimately filled in December 2007 with two white candidates from the 2007 List.

The letter concluded, "The City and the Fire Department made a rational decision to avoid litigation involving the integrity of the promotions process by waiting a few days for the New List to come out and making sure that . . . an adequate number of interviews were conducted prior to any promotions." *Id.* at 7; *see also id.* at 4 ("Given the possibility of objections and/or litigation from the Vulcan Society and the fact that the [2007] List was a mere four (4) days away from becoming valid, the City thought it was prudent to not rush the process and hold off on promotions, thereby utilizing the New List and making sure that all necessary interviews were properly conducted.").[3]

Carroll filed his suit in December 2007. In August 2009, Carroll moved for summary judgment on the issue of liability with respect to both his Title VII and his Equal Protection claims. The defendants cross-moved for summary judgment.
In April 2010, the district court denied Carroll's motion and granted summary judgment to the defendants.

*Discussion*

We review a grant of summary judgment *de novo*, drawing all inferences in favor of the nonmoving party. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).

Title VII prohibits an employer from discriminating against a person with respect to her "compensation, terms, conditions, or privileges of employment" because of her race. 42 U.S.C. § 2000e-2(a)(1). Under the familiar *McDonnell-Douglas* burden-shifting framework, if an employer proffers a nondiscriminatory reason for the allegedly discriminatory action, the

---

[3] These statements were made in sections of the letter titled "The Fire Department's Non-Discriminatory Rationale" and "Conclusion" and were based on a recitation of the facts recounted above. *See* Letter from Christopher T. Kurtz to EEOC at 4, 6 (Nov. 5, 2007).

plaintiff can survive summary judgment only by "point[ing] to evidence that reasonably supports a finding of prohibited discrimination." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

The defendants have proffered a nondiscriminatory reason for not promoting Carroll. The defendants assert that the City did not finally reject Carroll for one of the open lieutenant positions, but merely delayed deciding on the promotions while the Law Department evaluated the merit of the Vulcan Society's objections, that the Law Department had not completed its study of the objections by the time the 2004 List was superseded four days later, and that one of the objections (referring to the requirement to interview an additional candidate) was ultimately determined to be valid. The question on appeal is whether Carroll has pointed to evidence that reasonably supports a finding of prohibited discrimination. We conclude he has not because he failed to furnish necessary evidence on issues upon which he bears the burden of proof.

Carroll argues that the City either accelerated the effective date of the 2007 List or delayed consideration of his candidacy until the 2004 List had expired, in either case in order to avoid litigation by the Vulcan Society on the basis of its meritless, race-based objection that his promotion would violate the consent decree. He contends that this alleged action by the City constituted race-based employment action in violation of Title VII. However, we question whether acceleration of the new list by a few days, or delay of consideration of the objections for a few days, could subject the City to liability under Title VII in these circumstances which so favored use of the new list for reasons having nothing to do with race.

The 2004 List, which was originally intended to be effective for only two years and from which many appointments had been made from the ranks of those who scored well, had already

been in place for nearly three years. In the meantime, a new examination had been given, and the resulting 2007 List was scheduled to be put into effect no later than two weeks after July 5, 2007, the date Carroll was invited to the Mayor's office for an interview. The undisputed effect of use of the new list was to permit the City to promote candidates who had scored well enough to rank highest on the new list, rather than candidates who had risen to the top of the old list only as the result of the intervening promotions of those who had earned the best scores.

Neither side has argued the case should be decided under the standard for mixed-motive cases. However, we conclude the City is still entitled to summary judgment even if the Vulcan Society's objection based on the consent decree should be deemed race-based, and if the City would be subject to liability under Title VII were it shown to have accelerated the effective date of the 2007 List or delayed consideration of Carroll's candidacy until the 2004 List had expired in order to avoid litigation on the basis of that objection. *See Ricci v. DeStefano*, 129 S.Ct. 2658 (2009). The significant deficiencies in Carroll's evidence compel this result.

Carroll has the burden of proof. He offered no evidence that the City's decision to accelerate the effective date of the 2007 List was made after the Vulcan Society threatened to bring litigation if the 2004 List were used. *Cf.* Appellant's Br. at 14 (acknowledging that the reason why the 2007 List went into effect on July 9 instead of July 19 is "unexplained on the record before this Court"). Indeed, the only reference in the record to acceleration of the effective date of the 2007 List (in the Bracy letter) suggests that the decision to accelerate it from July 19 to July 9 or 10 was made before the Vulcan Society threatened litigation.

Carroll also asserts that the City's referral of the Vulcan Society's objections to the Law Department was a sham, designed solely to delay appointments from the 2004 List. But there is

no evidence that the Vulcan Society's objection to the number of candidates interviewed was not a valid objection which lawfully precluded any appointment from the 2004 List without the conduct of further interviews. Nor is there evidence that the City spent the four days (including two weekend days) that passed between Carroll's interview on Thursday, July 5, and Monday, July 9, when the 2004 List was replaced by the 2007 List, for the purpose of tactical delay or otherwise than in good faith consideration of this procedural objection. *See* Appellant's Br. at 12 (acknowledging that "the record is devoid of any evidence regarding . . . whether an evaluation [of the Vulcan Society's objections] had or had not been completed").

Carroll could have taken further discovery to fill these gaps in his evidence. It was he, however, who terminated his own discovery by informing the district court that he wished to move for summary judgment. As the record stands, it lacks evidence from which a factfinder could reasonably conclude that the defendants decided not to promote Carroll because of his race. While Carroll complains now that the record is bare on so many questions, it was his responsibility as the party bearing the burden of proof to take discovery so as to fill the holes.

For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK