Franklin v. Liberty Lines Transit, Inc., et al.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of March, two thousand seventeen.

PRESENT: DENNIS JACOBS,
DEBRA ANN LIVINGSTON,
Circuit Judges,
LEWIS A. KAPLAN,*
District Judge.

- - - - - - - - - - - - - - - - - - - - - - - - -X
STEVEN T. FRANKLIN,
Plaintiff-Appellant,

-v.- 16-1140

LIBERTY LINES TRANSIT, INC., JERRY D'AMORE,
THOMAS MURPHY, NEIL ERICKSON, DENNIS ZOTTOLI,
RICK ERICKKSON, KEVIN CLIFFORD,
Defendants-Appellees.†
- - - - - - - - - - - - - - - - - - - - - - - - -X

_____

* Judge Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.
† The Clerk of Court is respectfully directed to amend the official caption to conform to the above.

1

FOR APPELLANT:                        NNENNA ONUA, McKinley Onua &
                                      Associates, PLLC, Brooklyn,
                                      NY.

FOR APPELLEES:                        PETER M. PANKEN (Donald S.
                                      Krueger, Daniel J. Green, on
                                      the brief), Epstein Becker &
                                      Green, P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Román, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Steven Franklin appeals from the district court's grant of summary judgment dismissing his race discrimination claims against his former employer, Liberty Lines Transit, Inc. ("Liberty"), and against various Liberty employees. We review de novo a district court's grant of summary judgment, see Sousa v. Marquez, 702 F.3d 124, 127 (2d Cir. 2012), and will affirm only if, construing the evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "There is no genuine issue of material fact where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Durakovic v. Bldg. Serv. 32 BJ Pension Fund, 609 F.3d 133, 137 (2d Cir. 2010) (internal quotation marks and brackets omitted). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Franklin, an African-American, was hired in 2007 as a bus driver by Liberty, a private bus company in Westchester County. He was terminated in 2012 for theft of overtime and falsification of company records. On November 27, 2011, Franklin had been assigned to a route that scheduled the bus to make its last stop at 8:20 p.m. and arrive at Liberty's garage in Yonkers at 8:40 p.m. On his "day card" -- a form on which drivers are required to record their route times and reasons, if any, for delays -- Franklin listed his time of departure from

the last stop as 8:44 p.m. and his time of arrival at the garage as 9:50 p.m.  He requested one hour and ten minutes of overtime due to "not enough time, sporadic traffic and elderly passengers."  App'x at 653.

Franklin's overtime request was reviewed by Dennis Zottoli, Liberty's Labor Relations Manager.  Video recordings inspected by Zottoli showed that Franklin arrived at his last stop at 8:25 p.m.; conversed with a passenger for fourteen minutes; began his return to the garage at 8:45 p.m.; arrived at the garage at 9:00 p.m.; and, after speaking with a fellow Liberty employee for several minutes, exited the bus at 9:08 p.m.  Zottoli found no indication of heavy traffic at the end of Franklin's route, and counted only three fares for senior citizens or disabled passengers the entire day.  Zottoli's review of Franklin's day cards for four subsequent days revealed that Franklin claimed overtime on all four days for reasons identical to those on his November 27 day card.

Liberty sought to discharge Franklin pursuant to its policy (of which Franklin was aware) that "[t]heft of overtime [would] result in termination of employment."  App'x at 859.  Before Franklin could be discharged, however, he was entitled to two internal hearings followed by arbitration.  At his first-level hearing, Franklin stated that he could not recall why he wrote on his day card that he arrived at the garage at 9:50 p.m.  After the hearing, he told his union that a Liberty dispatcher may have been the one who wrote 9:50 p.m.  At his second-level hearing, Franklin admitted that he wrote 9:50 p.m., but claimed that he meant to write 8:50 p.m.  However, he did not explain why he would have written 8:50 p.m. given that he recorded his departure time from the final stop as 8:44 p.m., and the scheduled travel time between the final stop and the garage was twenty minutes.

After the internal hearings, Liberty upheld Franklin's termination.  Franklin challenged his termination in arbitration (where he was represented by his personal attorney).  The arbitrator upheld Franklin's termination, finding that he was guilty of stealing overtime.  The arbitrator observed that Franklin's claim that he intended to

3

write 8:50 p.m. instead of 9:50 p.m. "beggars credulity." App'x at 185.

After both the National Labor Relations Board and the Equal Employment Opportunity Commission declined to pursue his case, Franklin brought the present action, claiming that he was terminated because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq; and 42 U.S.C. §§ 1981, 1983, 1985, and 1986. The district court dismissed Franklin's claims on summary judgment, ruling, inter alia, that Franklin failed to establish an inference of discrimination and, in any event, failed to show that Liberty's stated reason for terminating him -- the stealing of overtime -- was pretextual.[1]

We analyze Franklin's discrimination claims under the three-step, burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). See Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012). To survive a motion for summary judgment on these claims, a plaintiff must first establish a prima facie case of discrimination. Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010). "Once a plaintiff meets this initial burden, the burden then shifts to the defendant to offer a legitimate non-discriminatory reason for the termination. If defendant does so, the burden returns to the plaintiff to show that the real reason for plaintiff's termination was his race . . . ." Id. at 492 (citation omitted). To establish pretext, "[t]he plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the . . . reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks and brackets omitted).

---

[1] The district court also dismissed Franklin's claim under 42 U.S.C. § 1983 due to a lack of state action, and dismissed his claims under 42 U.S.C. §§ 1985 and 1986 due to a lack of evidence of a conspiracy to engage in unlawful discrimination. Franklin does not contest those rulings on appeal.

4

Having reviewed the record de novo in light of the foregoing principles of law, we conclude that summary judgment was warranted.  Assuming without deciding that Franklin established a prima facie case of discrimination, we hold that he has not produced sufficient evidence to support a rational finding that Liberty's proffered reason for discharging him was, more likely than not, a pretext for race discrimination.

As an initial matter, Franklin's theft of overtime has already been determined.  Indeed, it was the central issue in an arbitration proceeding at which he had a full and fair opportunity to litigate.  He is thus collaterally estopped from challenging the fact of his theft, see Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998), and he does not contend otherwise.

Rather, Franklin argues that a jury could find pretext in light of Liberty's purportedly preferential treatment of similarly situated white employees.  That argument does not withstand scrutiny.  The comparators he offers are four bus drivers who were retained despite requesting between seven and seventeen minutes of questionable or potentially unnecessary overtime.  Unlike Franklin, however, they all provided credible justifications for their delays and overtime requests, and none was found to have falsified the times on a day card. The comparators therefore were insufficiently similar in all material respects to permit a reasonable jury to draw an inference of pretext.  Moreover, African-American bus drivers who -- like the comparators, and unlike Franklin -- provided credible explanations for their questionable or potentially unnecessary overtime requests were allowed to keep their jobs. Liberty's retention of these individuals and the fact that a plurality of its bus drivers were African-American further dispel an inference of discrimination.

Franklin also points to Liberty's extensive investigation into his misconduct and its termination of an African-American bus driver named Joseph Palmer as evidence of pretext.  Neither fact supports his contention.  First, Liberty investigated white bus drivers as well -- and even assigned supervisors to follow two of the comparators.  Second, Palmer was terminated because he physically assaulted a passenger.  Franklin cites

no example of a white bus driver who was retained despite engaging in similar conduct.

Accordingly, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK