*Blaise v. Verizon NY*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of March, two thousand twenty.

PRESENT:
PIERRE N. LEVAL
PETER W. HALL,
GERARD E. LYNCH,
*Circuit Judges.*

---

GUY BLAISE,

*Plaintiff-Appellant*,

v.                                                    19-1028

VERIZON NEW YORK INC.,

*Defendant-Appellee*,

---

Appearing for *Plaintiff-Appellant*:          LOUIS D. STOBER, JR., Mineola, NY.

Appearing for *Appellee*:          HOWARD M. WEXLER (Samuel Sverdlov, *on the brief*), Seyfarth Shaw LLP, New York, NY.

---

1

Appeal from a judgment of the United States District Court for the Eastern District of New York (Brown, *M.J.*).[1]

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on March 19, 2019 is **AFFIRMED**.

Plaintiff-Appellant Guy Blaise appeals from a grant of summary judgment in favor of Defendant-Appellee Verizon New York, Inc. Blaise alleged that he was inappropriately terminated from his position as a Local Manager at Verizon's garage in Hicksville, New York. Blaise brought claims for racial discrimination under Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Act (NYSHRA) as well as for age discrimination under the Age Discrimination in Employment Act and the NYSHRA.[2] We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

We review a district court's grant of summary judgment de novo. *Ollman v. Special Bd. of Adjustment No. 1063*, 527 F.3d 239, 245 (2d Cir. 2008). A court reviewing a motion for summary judgment must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant. *Id.* Further, "[i]n discrimination cases where state of mind is at issue, we

---

[1] Upon consent of both parties, the matter was heard by then-United States Magistrate Judge Gary R. Brown.

[2] Blaise has not pressed his claim for age discrimination on appeal, and therefore we do not consider it. *See Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006).

affirm a grant of summary judgment in favor of an employer sparingly because careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination." *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (internal quotations marks omitted).

To establish a prima facie case of Title VII disparate treatment, Blaise must show that (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004). An employer may rebut a prima facie case of disparate treatment by proffering a legitimate, nondiscriminatory business rationale for its conduct. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the employer provides a neutral reason for the adverse action, the plaintiff may only avoid summary judgment in favor of the employer by proffering evidence that would permit a rational finder of fact to infer that the defendant's employment decision was more likely than not, in whole or in part, motivated by discrimination. *Id.*

There is no dispute that Blaise has met the first three criteria to establish a prima facie case. The first question before us is whether the circumstances surrounding his termination give rise to an inference of discriminatory intent. *See Feingold*, 366 F.3d at 152. A showing of disparate treatment is sufficient to raise an inference of discrimination as part of a plaintiff's prima facie case. *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d

3

Cir. 2010). To show disparate treatment, Blaise must show that Verizon treated him less favorably than a similarly situated employee outside his protected group. *Id.* "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Id.* at 493-94 (internal quotations and citation omitted).

Blaise argues that two other Verizon employees, Archie Sarris and Patricia Brabant, were similarly situated, non-protected group employees. Brabant was Blaise's supervisor from 2012 to 2014.[3] Sarris was another Local Manager. Like Blaise, Sarris was terminated for inappropriate time sheet alterations. Because Blaise has alleged that Sarris received a "Short Term Incentive Award" that was paid out prior to his termination – a payment Blaise did not receive because he was fired before those bonuses were awarded – we assume he has shown sufficient disparate treatment to establish a prima facie case. *See Ruiz*, 609 F.3d at 493; *see also Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75-76 (2d Cir. 2016) (moving directly to third *McDonnell Douglas* step of discrimination claim analysis in part because plaintiffs "burden at the prima facie stage is minimal").

Verizon has provided a neutral reason for the adverse action taken against Blaise. An internal investigation concluded that Blaise altered time sheets in violation of the Verizon Code of Conduct. The Verizon Code of Conduct states that "Verizon does not

---

[3] Because we find that Sarris was similarly situated and thus an adequate comparator for purposes of establishing Blaise's prima facie case, we need not decide whether Brabant was similarly situated.

tolerate falsification *or improper alteration* of records." All managers and supervisors received a "flash" document on June 19, 2014 reminding them that "[m]anagement employees with responsibility for the administration, review, correction and approval of Associates' timesheets, should only approve time sheets that follow Verizon's rules for time reporting." It also stated that "[i]nappropriate or falsified time reported is a violation of our Code of Business Conduct and can result in: disciplinary action, up to and including dismissal[.]"[4] The "flash" document also stated certain rules regarding the use of "Non-Productive Time" or "NPT" codes on employee time sheets, and stated that NPT codes are not to be used for time spend on "routine cleaning/stocking." There were 62 time sheets that Blaise approved between August 1, 2014 and September 23, 2014 reviewed as part of the investigation. Of those time sheets, 27 did not match the handwritten and electronic time submitted by the field technicians. Verizon Security determined, based on these discrepancies, that the time sheets had been altered. Security determined, and Blaise does not dispute, that he was the individual who altered the time sheets. Blaise's alterations resulted in field technicians not being paid overtime on at least 10 occasions and being paid overtime they were not entitled to at least twice. Moreover, Verizon Security determined, and Blaise does not dispute, that Blaise had improperly

---

[4] Blaise contends that because the "flash" does not say that a manager must enter a narrative if they change a code, it cannot be said that Blaise violated the Code of Conduct. But by altering and then approving time sheets, Blaise violated the Code of Conduct.

5

approved NPT codes for time spent on routine cleaning of Verizon vehicles, in violation of Verizon's time sheet policies.

Based on these conclusions Verizon Human Resources Business Partner Susan Williams-Sias and Director Robert Connolly recommended to Vice President Walter Jones that Blaise be terminated. Blaise was terminated in February 2015, almost two months after Verizon Security concluded he was guilty of "inappropriately alter[ing] time sheets," and violating the Verizon Code of Conduct. This was a facially neutral reason for terminating Blaise. *See Feingold*, 366 F.3d at 155 (finding a violation of department policies, *inter alia*, to be a legitimate, non-discriminatory business rationale for termination).

Because Verizon had a valid, non-discriminatory reason to terminate Blaise, he must show that the decision was "a mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). Blaise again points to the disparate treatment between his termination and Sarris's. At this stage, however, Verizon can introduce other evidence to rebut his allegations. *See id.* (considering the evidence "taken as a whole").

Verizon proffered substantial evidence to suggest Blaise was not subject to disparate treatment. Nine non-minority managers were also found by Verizon Security to have improperly altered time sheets, and that conduct led to their termination. Blaise argues that these are not similarly situated employees because Verizon Security

determined that these employees had intentionally altered time sheets in order to boost their productivity numbers, while Security could not substantiate allegations that Blaise possessed the same intent. But "the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). We find that the other Caucasian regional managers Verizon points to were similarly situated. The evidence shows that when these similarly situated regional managers altered time sheets in violation of the Verizon Code of Conduct, they were terminated irrespective of race. To the extent that Sarris's termination was delayed, Verizon demonstrated that he had been subject to an earlier investigation, and then, before Verizon had reached a decision about how to discipline Sarris for violations found during that investigation, was a subject of the anonymous allegations that launched the Blaise investigation; Sarris then went on medical leave, so Verizon Security's questioning of Sarris was delayed. Because Verizon has presented convincing evidence that it treated Blaise in the same way it treats other similarly situated employees, and because Blaise has presented no evidence from which a factfinder could conclude that Verizon's explanation for his termination is pretextual, the district court did not err in granting summary judgment in Verizon's favor.

We have considered Blaise's remaining arguments and find them to be without merit. The judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court