22-1790-cv
Kinnin v. Skidmore Coll.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of June, two thousand twenty-three.

PRESENT:
> BARRINGTON D. PARKER,
> MICHAEL H. PARK,
> ALISON J. NATHAN,
> *Circuit Judges.*

_____

Kathy Kinnin,

*Plaintiff-Appellant*,

v.                                          22-1790

Skidmore College,

*Defendant-Appellee.*

_____

FOR PLAINTIFF-APPELLANT:          Philip G. Steck, Cooper Erving & Savage LLP, Albany, N.Y.

FOR DEFENDANT-APPELLEE:          Michael D. Billock, Bond, Schoeneck & King, PLLC, Saratoga Springs, N.Y.

Appeal from a judgment of the United States District Court for the Northern District of New York (Sharpe, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

From 2010 to 2018, Plaintiff-Appellant Kathy Kinnin was employed in the information technology ("IT") department of Skidmore College ("Skidmore"). In May 2018, Leon Briggs, another IT employee at Skidmore, submitted a complaint to Human Resources alleging that Kinnin racially discriminated against him. Later that month, Kinnin submitted a Human Resources complaint against Briggs and Tom Marcotte (the Director of IT Planning and Strategic Communications), alleging that they were discriminating against her based on her gender. Skidmore hired an outside investigator, Diane Pfadenhauer, to look into both complaints. Pfadenhauer interviewed 26 people and reviewed a total of 200 attachments that Kinnin had submitted, before issuing a 24-page report (the "Report"). Pfadenhauer concluded that there was no evidence of either gender- or race-based discrimination, but that many of Briggs's complaints about Kinnin were accurate, even if not racially motivated. The Report described Kinnin as a poor manager, with a "history of subjecting certain of her employees to her wrath for unknown reasons," including "painstaking micromanagement, intense criticism of work and tasks, assignment of menial responsibilities, etc., until the individual either resigns or is terminated." App'x at A-987 to 988. Soon after the report was issued, Kinnin was terminated by Skidmore's Vice President, Michael West for her poor performance and poor management.

Kinnin sued Skidmore, alleging that she was discharged because of gender discrimination and retaliation in violation of Title VII. Kinnin also alleged nepotism in violation of Title IX. The district court granted summary judgment in favor of Skidmore. With respect to Kinnin's Title VII claims, the district court reasoned that Kinnin could not identify evidence demonstrating that

2

Skidmore's nondiscriminatory reason for her termination—a negative evaluation from an external investigator—was a pretext for discrimination. The district court also denied as moot Skidmore's motion to exclude Kinnin's expert's testimony. Kinnin appealed with respect to her Title VII claims only. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review *de novo* a district court's grant of summary judgment, construing the evidence in the light most favorable to the nonmoving party and drawing all inferences and resolving all ambiguities in favor of that party." *Tompkins v. Metro-N. Commuter R.R. Co.*, 983 F.3d 74, 78 (2d Cir. 2020) (cleaned up). "We analyze Title VII claims under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green . . . .*" *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 108 (2d Cir. 2019) (internal quotation marks omitted). "Under this framework, a plaintiff must first establish a *prima facie* case of discrimination." *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). "Once a plaintiff meets this initial burden, the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the termination." *Id.* at 492. "If defendant does so, the burden returns to the plaintiff to show" that the nondiscriminatory reason is pretextual. *Id.*

The district court correctly concluded that Kinnin failed to point to any evidence in the record indicating that Skidmore's nondiscriminatory reason for firing her—namely, her poor management and performance as described in the Report—was pretextual. Kinnin does not allege any discriminatory motive by West, who fired her. She also fails to show that West's "adverse employment action was proximately caused by a subordinate who had a discriminatory motive and

3

intended to bring about the adverse employment action." *Natofsky v. City of New York*, 921 F.3d 337, 350 (2d Cir. 2019) (internal quotation marks omitted).

First, Kinnin has not identified any evidence in the record indicating that West's decision was influenced by any other member of the staff. West testified that before he terminated Kinnin, he sought advice from Human Resources and spoke "with the president of the college to inform him of my decision." App'x at A-651. West also spoke to Bill Duffy, Kinnin's manager. West testified that Duffy was not involved in the decision making, but that he sought Duffy's "support," meaning that West "would have reconsidered" if Duffy "objected strenuously." *Id.* at A-652. But there is no evidence in the record that any of these conversations influenced West's decision to fire Kinnin, which he described as "my decision" and which was based on the "poor performance and poor management" outlined in the Report. *Id.* at A-650, A-652.

Second, Kinnin cannot show that the Report was influenced by discrimination. Kinnin claims that there are certain "defect[s]" in the Report that demonstrate that it was "infected with the influence of the discriminator and retaliator." Appellant's Br. at 39. Specifically, Kinnin claims that the Report reflects Pfadenhauer's mistaken belief that Marcotte was Kinnin's supervisor and ignored that Skidmore had received discrimination complaints from Beth DuPont. But those alleged defects rely on statements Pfadenhauer made during a deposition over two years after the Report was issued. The Report does not reflect any of these supposed errors and, instead, correctly lists Marcotte's title and DuPont's prior claims of gender-based conflicts with other members of the IT department. *See* App'x at A-992.

The district court thus correctly granted Skidmore's motion for summary judgment. Even if Kinnin could show that other Skidmore employees had discriminatory animus against her, she

4

is unable to show that their animus influenced the Report or West's decision to terminate her. "While an independent investigation does not necessarily insulate a defendant from liability, it does where, as here, it 'results in an adverse action for reasons unrelated to'" any allegedly discriminatory behavior or motives. *Jones v. Target Corp.*, 792 F. App'x 54, 56 (2d Cir. 2019) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 420–22 (2011)).

We have considered all of Kinnin's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court