23-7608-cv
*Trivedi v. St. Peter's Health Partners Med. Assocs., P.C.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of December, two thousand twenty-four.

PRESENT:      GUIDO CALABRESI,
              SARAH A. L. MERRIAM,
                   *Circuit Judges*,
              JED S. RAKOFF,
                   *District Judge.*[*]

_____

MEHUL TRIVEDI,

     *Plaintiff-Appellant*,

          v.                                              No. 23-7608-cv

ST. PETER'S HEALTH PARTNERS
MEDICAL ASSOCIATES, P.C.,

     *Defendant-Appellee.*

_____

_____

[*] Judge Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

FOR PLAINTIFF-APPELLANT:    ALLEN ARTHUR SHOIKHETBROD, Tully Rinckey, PLLC, Albany, NY.

FOR DEFENDANT-APPELLEE:    ADAM MASTROLEO (Hannah K. Redmond, *on the brief*), Bond, Schoeneck & King, PLLC, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (McAvoy, *J.*).

**UPON DUE CONSIDERATION**, the September 29, 2023, judgment of the District Court is **AFFIRMED**.

Plaintiff-appellant Mehul Trivedi appeals the District Court's award of summary judgment in favor of defendant-appellee St. Peter's Health Partners Medical Associates, P.C., ("SPHPMA"). *See Trivedi v. St. Peter's Health Partners Med. Assocs., P.C.*, No. 1:20CV00609(TJM), 2023 WL 7290809, at *1 (N.D.N.Y. Sept. 29, 2023). Trivedi, a bariatric surgeon, brought this action against his former employer, SPHPMA, asserting claims of discrimination based on race and color, and retaliation, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*; 42 U.S.C. §1981; and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§290 *et seq*. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

"When a district court grants summary judgment for the defendant, we review *de novo*, resolving all ambiguities and drawing all permissible factual inferences in favor of the plaintiff." *Francois v. Metro-N. Commuter R.R. Co.*, 107 F.4th 67, 71 (2d Cir. 2024) (per curiam). "Summary judgment is appropriate if there is no genuine issue as to any

2

material fact and the moving party is entitled to judgment as a matter of law." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing Fed. R. Civ. P. 56(c)).

"The Title VII, §1981, and NYSHRL discrimination claims are governed at the summary judgment stage by the burden-shifting analysis first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015). Likewise, "[f]ederal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas*." *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *see also Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). Trivedi bears the initial burden of establishing a *prima facie* case, a burden that "has been frequently described as minimal." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 270 (2d Cir. 2023) (quotation marks and citation omitted).

Upon *de novo* review, we conclude that Trivedi has failed to establish a *prima facie* case of either discrimination or retaliation. Accordingly, we affirm the grant of summary judgment in favor of SPHPMA.

## I.  Discrimination Claims

To make out a *prima facie* case of discrimination, Trivedi must establish "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb*, 521 F.3d at 138.

Trivedi contends that SPHPMA refused to provide him with a second surgeon to ensure he had back-up coverage, allowed harassment against him in the workplace,

3

conducted unwarranted investigations into his clinical skills, and terminated his employment, all because of his race and color. *See* Appellant's Br. at 39-42. The parties do not dispute that Trivedi, who is "Indian with a brown complexion," Joint App'x at 16, belongs to a protected class, or that he was qualified for his position. There is also no dispute that at least one of SPHPMA's acts – the termination of Trivedi – constituted an adverse employment action. Nevertheless, Trivedi has failed to establish a *prima facie* case because he has not shown that the acts of which he complains occurred in circumstances giving rise to an inference of discriminatory intent.

### A. Failure to Hire Additional Surgeon

Trivedi asserts that SPHPMA refused to hire an additional bariatric surgeon to join his practice, leaving him without back-up coverage. He contends that SPHPMA treated him less favorably in this regard than it treated Matthew McDonald, a Caucasian bariatric surgeon also employed by SPHPMA. SPHPMA hired McDonald in 2016 to establish a bariatric program at another hospital in a nearby city and, in 2018, it hired a second surgeon to join McDonald's practice. In 2016, another surgeon with experience in bariatrics was hired to provide Trivedi with cross-coverage, but she departed within a year. Although a new search was initiated, it was "called off" in 2017 or 2018 and no additional surgeon was hired into Trivedi's practice. Joint App'x at 257-58. Trivedi contends that this differential treatment of McDonald gives rise to an inference of discriminatory intent.

"[D]iscriminatory intent can be shown by either direct evidence of discriminatory animus or circumstantial evidence of such animus, including by showing disparate

4

treatment among similarly situated employees." *Radwan v. Manuel*, 55 F.4th 101, 132 (2d Cir. 2022). "The standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases . . . . [T]he comparator must be similarly situated to the plaintiff in all material respects." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010) (quotation marks and citations omitted).

Trivedi has not met his burden at the *prima facie* stage to show that he and McDonald were similarly situated "in all material respects." *Id.* While both were bariatric surgeons employed by SPHPMA, they worked at different locations, in different private medical offices, different hospitals, and different cities. The only similarities Trivedi identifies between himself and McDonald are their surgical specialty and their employer. Although he claims they "competed for the same pool of patients," Joint App'x at 252, Trivedi has not demonstrated that he and McDonald had similar staffing needs, that their respective hospitals had the same staffing capacities, or that the demand for bariatric surgery was in fact the same in their two locations. Accordingly, SPHPMA's differential treatment of Trivedi and McDonald does not give rise to an inference of discrimination.

### B.     "Harassment" by McDonald and Santoro

Trivedi also argues that he has established a *prima facie* case based on a "cat's paw" theory of discrimination. Appellant's Br. at 45. This theory "refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse

5

employment action." *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272 (2d Cir. 2016) (quotation marks and citations omitted). Trivedi asserts that McDonald and Carol Santoro, a nutritionist M.D. also employed by SPHPMA, engaged in a "harassment campaign" against him, intending to induce SPHPMA to take adverse employment actions against him. Appellant's Br. at 5.

The "cat's paw" theory requires that the subordinate who induces the employer to act have a discriminatory motive. It is undisputed that Santoro and McDonald were critical of Trivedi's clinical skills, and that statements by Santoro and McDonald played a part in St. Peter's Hospital (the "Hospital"), where Trivedi had surgical privileges, deciding to investigate Trivedi's clinical outcomes.[1] It is also undisputed that McDonald in particular made a number of disparaging remarks about Trivedi, and that SPHPMA President Rik Baier "spoke with Dr. McDonald and instructed him not to publicly discuss [Trivedi's] clinical skills." Joint App'x at 253. But Trivedi has not pointed to any evidence that either McDonald or Santoro acted *because of* Trivedi's race or color. Trivedi conceded that he had never heard McDonald comment on his race or color, either directly or from others, and simply assumed that was the basis for the criticism, "[b]ecause he had no other reason to" criticize him. Joint App'x at 124. As to Santoro,

---

[1] In 2018, based at least in part on concerns raised by McDonald, the Hospital brought in an external reviewer with expertise in bariatrics to examine a subset of Trivedi's patient files. Trivedi claims the review itself was discriminatory because the external reviewer interviewed McDonald, but did not speak with Trivedi. *See* Appellant's Br. at 44, 54. This does not give rise to an inference of discrimination. Trivedi and McDonald were not similarly situated with respect to the review – Trivedi was the subject of the investigation, while McDonald was not.

6

Trivedi simply assumes she must have been acting out of discriminatory animus because she "was collaborating" with McDonald, though he conceded at his deposition that he had no "evidence that she treated [him] differently based" on his race or color. Joint App'x at 128, 131. Such pure speculation is insufficient to meet even the minimal burden of a *prima facie* case.

## C. Termination

Finally, Trivedi asserts that his termination was based on his race or color. He contends that the procedure by which he was terminated was irregular, giving rise to an inference of discrimination.

In March 2019, the Joint Operating Committee ("JOC"), a "management committee of physicians that oversees the day-to-day administration of the various surgical practices within the [SPHPMA] umbrella," Joint App'x at 233, recommended to Baier that Trivedi be terminated. Baier presented that recommendation to the SPHPMA Board's Executive Committee, which voted to approve Trivedi's termination. Trivedi contends that this was "not in keeping with the process" that had been used when SPHPMA considered terminating his employment in 2017, "where such decisions went to the full Board." Appellant's Br. at 17. That may be true. But Trivedi has presented no evidence suggesting that the process followed in 2019 in fact differed from SPHPMA's usual practice at the time, or that the change in procedures between his 2017 review and his 2019 termination was discriminatory in any way. The mere difference in procedures between 2017 and 2019 does not give rise to an inference of discriminatory intent. *See Holcomb*, 521 F.3d at 137 ("Even in the discrimination context . . . a plaintiff must

7

provide more than conclusory allegations to resist a motion for summary judgment.").[2]

In sum, Trivedi has failed to provide evidence supporting an inference of discrimination as to any of the purported adverse employment actions he identifies.[3] He has thus failed to make out a *prima facie* claim of discrimination, and summary judgment in favor of SPHPMA is proper on the discrimination claims.

## II. Retaliation Claims

Trivedi contends that he was terminated in retaliation for his prior complaints of discrimination. "To present a prima facie case of retaliation . . . , [Trivedi] must show that (1) [he] participated in an activity protected by Title VII, (2) this participation was known to [SPHPMA], (3) [SPHPMA] subjected [him] to a materially adverse action thereafter, and (4) a causal connection existed between the protected activity and the adverse action." *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 239 (2d Cir. 2024) (quotation marks and citation omitted); *see also Banks*, 81 F.4th at 275 ("Retaliation claims brought under the NYSHRL and §1981 are subject to the same standards as federal claims under Title VII."). Specifically, Trivedi contends that he raised complaints about (1) a January 10, 2019, letter regarding his performance, and (2) harassment by McDonald.

---

[2] Trivedi also contends that there was a "hostile environment" for individuals of Indian and Middle Eastern descent at the Hospital and asserts that he witnessed the termination of three Indian and Middle Eastern doctors. Appellant's Br. at 46. However, he provides no information about these individuals' professional backgrounds or the circumstances surrounding their terminations. Trivedi's conclusory assertion regarding a "hostile environment" does not give rise to an inference of discrimination.

[3] We need not, therefore, determine whether each event identified by Trivedi qualifies as an adverse employment action.

### A. Complaints About the January 10, 2019, Letter

In October 2018, one of Trivedi's post-operative patients died, and the Hospital commissioned an independent external review. This was the third investigation into Trivedi's patient outcomes in less than two years.[4]

On January 10, 2019, the Hospital sent Trivedi a letter indicating that the 2017 and 2018 reviews had led Hospital leadership "to conclude that [Trivedi had] competency issues and require[d] additional training." Joint App'x at 48. It requested that Trivedi take certain remedial actions, including a leave of absence, and indicated that a review would be conducted if he completed the actions to ensure that his performance had improved. If he did not take the actions, the matter would be referred to the Executive Committee to "conduct an investigation and recommend appropriate corrective action." Joint App'x at 49. Trivedi asserts that he had conversations with two people, Steven Hanks, then Chief Clinical Officer of SPHPMA, and Sudeep Ross, then Chief Medical Officer of SPHPMA, asserting his belief "that the January 10 letter was a result of Dr. Trivedi's skin color." Appellant's Br. at 22.

Assuming that these verbal reports constituted "protected activity," Trivedi has failed to establish any causal connection between them and his termination. The close timing between the reports and Trivedi's termination might well be enough "to make a prima facie showing of causation indirectly through temporal proximity." *Zann Kwan v.*

---

[4] The Hospital had previously conducted an internal review in 2017, based in part on a report from Santoro, and had commissioned an independent external review in early 2018, based in part on a report from McDonald.

*Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013). But Trivedi has failed to establish that the decision to terminate him was made by actors with knowledge of the reports. Trivedi contends that the JOC made the decision to terminate him, and that the Executive Committee "was a mere rubber stamp" of that decision. Joint App'x at 249. Trivedi does not deny the statement by Jason Heckman, a member of the JOC and Executive Committee, that Trivedi's race and color were "never discussed" by the JOC and that he personally "was not aware that [Trivedi] ever made a complaint that he felt he was being treated differently because of his race, color or national origin and such a complaint was never discussed by the Surgery JOC or Executive Committee." Joint App'x at 61, 250. Trivedi in fact has provided no evidence at all suggesting that the JOC had any knowledge of any complaints that he may have made regarding discrimination, or any other protected activity.[5] Because Trivedi contends the JOC made the termination recommendation, and the Executive Committee merely rubber-stamped it, the lack of evidence that the JOC had knowledge of any protected activity defeats his retaliation claim.

**B.    Complaints About McDonald**

It is undisputed that Trivedi complained to SPHPMA leadership about McDonald's behavior. Trivedi has not, however, established that these complaints constituted protected activity. "Protected activity includes opposing an *unlawful* employment practice

---

[5] Notably, Hanks avers, and Trivedi submits no evidence to refute, that (1) even if Trivedi raised a claim of discrimination with him, he never reported such a claim "to anyone at" SPHPMA and (2) he played no role in the decision to terminate Trivedi. Joint App'x at 38.

or otherwise making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing." *Banks*, 81 F.4th at 275 (quotation marks and citation omitted) (emphasis added). "[T]he plaintiff need not establish that the conduct [he] opposed was actually a violation of Title VII," the NYSHRL, or section 1981, but must show that he "possessed a good faith, reasonable belief that the underlying employment practice was unlawful under [the relevant] statute." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (quotation marks and citation omitted).

Trivedi never suggested in his complaints about McDonald that the harassment was related to his race or color. For example, he wrote an email to Hanks in April 2018 complaining "about 'anonymous' physicians questioning his bariatric practice." Joint App'x at 252. That email "did not mention any allegation that he felt targeted by Dr. McDonald or Dr. Santoro because of his race, color and/or national origin, or that he was being treated differently because of his race, color or national origin." Joint App'x at 253. Likewise, in a March 17, 2019, email to SPHPMA Director of Human Resources Anna Bauer, Trivedi wrote that McDonald had engaged in "workplace harassment and bullying" and had "broken every code of conduct . . . with impunity." Joint App'x at 98. That email also did not make claims of discrimination.[6]

---

[6] SPHPMA asserted in its Statement of Material Facts that Trivedi "did not make any allegation in his email to Ms. Bauer that he felt Dr. McDonald or Dr. Santoro were engaging in any racially motivated conduct or that he was being discriminated against based upon his race, color or national origin." Joint App'x at 254. Trivedi responded: "Deny in that the email speaks for itself," citing the email in support of this denial. *Id.* The March 17, 2019, email is in the record; we have confirmed that it does not make any

Such "generalized" complaints do not suffice to establish that an employer "reasonably [could] have understood that" the employee "was complaining of conduct prohibited by Title VII," the NYSHRL, or section 1981. *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (per curiam) (quotation marks and citation omitted). Trivedi's complaints "in no way intimated that [he] believed [McDonald's] conduct to be influenced by" his race or color "and hence there was no evidence to support a finding that" he was terminated "in retaliation for opposing . . . prohibited discrimination." *Galdieri-Ambrosini*, 136 F.3d at 292. Accordingly, Trivedi's complaints about McDonald did not constitute protected activity.

In sum, Trivedi has failed to establish a *prima facie* case as to his retaliation claims on either theory advanced.

\* \* \*

---

allegations of invidious discrimination, or indeed mention race or color at all. *See* Joint App'x at 97-98.

We have considered Trivedi's remaining arguments and find them to be without merit.[7] For the foregoing reasons, the September 29, 2023, judgment of the District Court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

---

[7] Trivedi contends that the District Court should have drawn an adverse inference against SPHPMA based on spoliation of evidence, pointing to the fact that certain interview notes were not available in discovery. The District Court reasonably determined that "the missing documents have little bearing on Plaintiff's claims" because the interview was not related to "a race discrimination complaint." *Trivedi*, 2023 WL 7290809, at *16. The District Court's factual findings were not clearly erroneous, and the denial of an adverse inference was not an abuse of discretion. *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir. 2007).